234 So.2d 854 (1970)
PRINGLE ASSOCIATED MORTGAGE CORP.
v.
Ross E. COX.
No. 7927.
Court of Appeal of Louisiana, First Circuit.
April 13, 1970.
Rehearing Denied May 25, 1970.
Victor A. Sachse and Frank P. Simoneaux, Breazeale, Sachse & Wilson, Baton Rouge, for appellant.
Dale, Owen, Richardson, Taylor & Mathews, by Robert C. Taylor, Baton Rouge and Wray, Simmons & Robinson, Baton Rouge, for appellee.
Before LANDRY, SARTAIN, and ELLIS, JJ.
ELLIS, Judge.
Plaintiff, Pringle-Associated Mortgage Corporation, was the owner of a tract of ground which it acquired through foreclosure proceedings. For a considerable period of time thereafter, and during the events and circumstances giving rise to this suit, the property was involved in extensive and complicated litigation. See Pringle-Associated Mortgage Corporation v. Eanes, 197 So.2d 160 (La.App. 1 Cir. 1967); Pringle-Associated Mortgage Corporation v. Eanes, 251 La. 711, 206 So.2d 81 (1968); Pringle-Associated Mortgage Corporation v. Eanes, 211 So.2d 399 (La.App. 1 Cir. *855 1968); writs refused, 252 La. 887, 214 So. 2d 715 (1968); Pringle-Associated Mortgage Corporation v. Eanes, 208 So.2d 346 (La.App. 1 Cir. 1968); writs issued 252 La. 267, 210 So.2d 508 (1968); 252 La. 268, 210 So.2d 508 (1968); 252 La. 270, 210 So. 2d 509 (1968). Situated on the property was a partially completed apartment building, known as Plantation Trace Apartments. The property was acquired by Pringle on June 8, 1966, and on August 4, 1966, it sold the property to Seaborn R. Wicker, Jr. The purchase price was, in effect, the amount of money which Pringle had tied up in the property and was conditioned on the completion by Wicker of the apartment building and a loan by Pringle to Wicker of some $300,000.00. On August 26, 1966, Wicker entered into an act of exchange with defendant Ross E. Cox, by virtue of which Cox took title to the property, subject to the various agreements made between Wicker and Pringle. The letter of agreement of August 4, 1966, contains the following language:
"I recognize that litigation is pending by which a company called Pay, Inc., challenges your foreclosure proceedings. You will continue to handle that litigation without cost to me even though I am required or choose to become a party to that litigation, but if I retain an attorney to take part in that litigation, I shall pay the charges of such attorney.
"If because of that litigation a title insurance company refuses to issue a policy suitable to a lending institution for a long-term loan, the construction loan if made by or through you will be extended for three months at the construction loan interest rate of 7% and construction loan fee of ¼ of 1%, but (1) if this condition continues for an additional three months, I shall have the right to rescind the sale and require the restoration of the status quo."
On August 26, pursuant to the agreement, Mr. Cox borrowed $250,000.00 from Pringle. The note was payable on or before nine months after date, in accordance with the terms of the agreement. At the end of that time, the litigation referred to above was still pending, and the loan was extended for an additional period of three months. At that time, according to the correspondence in evidence, it was the opinion of the parties involved that, because of the litigation, a title policy could not be issued on the property. As of that time, Mr. Cox had made no application for long term financing, apparently because it was presumed that no title policy could be obtained.
On June 14, 1967, defendant was notified that the plaintiff was undertaking to arrange for the issuance of a title insurance policy, notwithstanding the litigation, and that defendant would be advised when the policy would issue. After some negotiation, Pringle received the following letter from Frank L. True, Jr., President of Southwest Title Corporation, dated August 4, 1967:
"Reference is made to your letter of July 27th together with its enclosures, regarding the captioned property.
"Please be advised that upon receipt from your company of an indemnification agreement against loss or damage which may result from an adverse decision in the matter of `Pay, Inc.,' vs. your company, which matter is now pending before the Supreme Court of the State of Louisiana; which agreement shall include a statement from you that should your company be required to repurchase the property, you would agree to cancellation of the mortgagee's policy.
"We will issue to you our mortgagee's title policy in an amount not to exceed $300,000.00 subject to title search and all other usual requirements, but will not take exception in the policy to the pending litigation."
By letter of August 2, 1967, defendant notified plaintiff that, because the litigation was still pending, he had elected to be restored to the status quo, in accordance *856 with the agreement of August 4, 1966. He requested that plaintiff meet him at his attorney's office on August 4, 1967, to effect the re-transfer of the property. Plaintiff did not appear at that time. Subsequently this suit was filed asking for a declaratory judgment fixing the rights of the parties.
After trial on the merits, judgment was rendered in favor of defendant and against plaintiff, recognizing defendant's right to rescind the sale of the property, and ordering plaintiff to accept the transfer thereof, and to pay defendant $476,036.21 with interest at 7% from August 4, 1967, until paid, subject to a credit of $247,000.00 on delivery to Cox of the notes executed by him. Certain other alternatives were also ordered. This judgment was dated June 18, 1969. On June 24, 1969, more than three clear judicial days later, under the authority of Article 1951 of the Code of Civil Procedure, the judgment was amended in certain respects regarding how interest was to be computed. Plaintiff has appealed from both judgments, and defendant has answered the appeal, complaining of several aspects thereof.
Plaintiff takes the position that the title insurance policy called for in the August 4, 1966, agreement was available to defendant before the expiration of the three months extension, and that defendant is not entitled to be returned to the status quo. It claims that defendant is obligated to obtain his long term financing and pay off the construction loan, or that it has the right to foreclose on its collateral mortgage.
Defendant claims that the existence of the litigation and not the issuance of the title policy is the condition on which his right to be returned to the status quo is predicated, and that, since the title was defective at the end of the three months extension, he is entitled to re-transfer the property to plaintiff and be returned to the status quo as defined in the said agreement.
We think that defendant's position is well taken. In construing the agreements, we are bound by the following standards, set forth in the Civil Code, in Articles 1945-1950.
"Art. 1945. Legal agreements having the effects of law upon the parties, none but the parties can abrogate or modify them. Upon this principle are established the following rules:
"FirstThat no general or special legislative act can be so construed as to avoid or modify a legal contract previously made;
"SecondThat courts are bound to give legal effect to all such contracts according to the true intent of all the parties;
"ThirdThat the intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences;
"FourthThat it is the common intent of the partiesthat is, the intention of allthat is to be sought for; if there was a difference in this intent, there was no common consent and, consequently, no contract.
"Art. 1946. The words of a contract are to be understood, like those of a law, in the common and usual signification, without attending so much to grammatical rules, as to general and popular use.
"Art. 1947. Terms of art or technical phrases are to be interpreted according to their received meaning with those who profess the art or profession to which they belong.
"Art. 1948. When there is a doubt as to the true sense of the words of a contract, they may be explained by referring to other words or phrases used in making the same contract.
"Art. 1949. When there is anything doubtful in one contract, it may be explained by referring to other contracts *857 or agreements made on the same subject between the same parties, before or after the agreement in question.
"Art. 1950. When there is anything doubtful in agreements, we must endeavor to ascertain what was the common intention of the parties, rather than to adhere to the literal sense of the terms."
It seems apparent, when reading the agreement as a whole, that it contemplated the successful termination of the litigation within a year. It also appears that the issuance of title insurance is considered as indicative of the validity of the title, rather than a condition of the contract. That is, within one year plaintiff was obligated to put the title to the property in such condition that title insurance would issue routinely. We do not believe that the parties intended otherwise when the agreement was drawn.
Neither is there any evidence offered to show that any lender would accept a title policy founded upon an indemnity agreement rather than the validity of the title itself as the basis for long term financing.
Finally, it does not appear that defendant was ever advised, during the life of the agreement, that such a policy was available, although plaintiff assumed the burden of so doing in its letter of June 14, 1967.
In his answer to the appeal, defendant complains of the failure of the court to allow reimbursement of $750.00 paid by him to Pringle as a construction loan fee when the loan was extended for three months. An examination of the reasons for judgment reveals that this amount was included. $13,501.31 of interest was admitted by Pringle. The initial construction loan fee of $3,000.00 and the extension fee of $750.00 were disputed, Pringle claiming these were not interest. The judge awarded $17,251.31, which is the sum of all of those amounts. This award is not questioned by Pringle.
Defendant further alleges that the June 24 judgment differs in substance from the June 18 judgment, and the court was without authority to make substantive changes under Article 1951 of the Code of Civil Procedure. His contention in that respect is correct. The changes in the June 18 judgment were not to correct errors in calculation, but rather to amend the way in which interest was to be computed. This is a substantive change, not permitted by Article 1951. The June 24, 1969 judgment is, therefore, invalid, and the June 18 judgment is the only valid, appealable judgment in the record. Our examination of that judgment, in the light of the August 4, 1966, agreement, and our interpretation thereof, leads us to the conclusion that it correctly resolves the issues between the parties.
The judgment of June 24, 1969, is, therefore, annulled and set aside, and the judgment of June 18, 1969, is reinstated, and affirmed, at plaintiff's cost.
Affirmed.