685 So.2d 158 (1996)
Ronald C. MARTIN, Plaintiff-Appellee,
v.
Dennis DAVID, Cora David, et al., Defendants-Appellants.
No. 95-1411.
Court of Appeal of Louisiana, Third Circuit.
July 31, 1996.
Writ Denied November 15, 1996.
*159 Ronald C. Martin, pro se.
David Arthur Hurlburt, Lafayette, for Scottsdale Insurance Co.
P. Charles Calahan, New Iberia, for P. Charles Calahan.
Glenda Huddleston, New Iberia, for Landry & Shea.
Before THIBODEAUX, SAUNDERS and AMY, JJ.
SAUNDERS, Judge.
A personal injury plaintiff retained the services of two different attorneys who, following settlement, disagreed over the fees to which each is entitled.
This appeal, arising from the dispute, requires that we determine whether the trial court erred procedurally in recalling and vacating an ex parte order it granted dismissing an intervention filed by one of the attorneys. Additionally, this appeal requires that we consider the magnitude of liability imposed upon a solidarily liable party. For the following reasons, we hold that the intervention claim remains viable and that an insurer who failed to respect an attorney's fee contract recorded in accordance with La.R.S. 37:218 did so at its own peril.

FACTS
On June 20, 1992, fire broke out at the Royal Motel of New Iberia. Ronald C. Martin, a hotel guest, was severely burned while attempting to escape the ensuing flames.
*160 On July 9, 1992, Martin hired the law firm of Landry and Shea (hereinafter "Shea") from Lafayette to represent him. On September 25, 1992, Shea filed a petition for damages naming as defendants hotel owners, Dennis David and Cora David, and the Scottsdale Insurance Company, the hotel's insurer.
On October 5, 1992, attorney Charles Calahan, unrelated to Shea's firm, filed an amended petition dismissing Dennis & Cora David from the suit and naming Royal Motel & Hotel, Inc. as defendants. Simultaneously, Calahan filed a motion to enroll as counsel of record, which was granted October 6, 1992.
One week later, on October 13, 1992, plaintiff Martin executed an "Attorney-Client Employment Contract" with Shea purportedly entitling Landry & Shea to onethird (1/3) of any recovery Martin was to obtain in his personal injury action. On the same day, attorney Shea moved to rescind Calahan's enrollment, attaching the foregoing contract, as well as an affidavit signed by Martin. The motion included a certification that service had been effectuated upon all counsels of record. This motion was denied November 20, 1992, following a hearing. The trial court ultimately concluded that Calahan could prosecute the litigation. The trial court specifically observed that the conflict between the law firms "was created through the actions of Ronald C. Martin" and that neither Calahan nor Shea was responsible. This Judgment was signed November 25, 1992.
About one week later, on December 3, 1992, client Martin settled the case, executing a receipt and release agreement with Scottsdale Insurance Company and its corporate owner. Martin received a lump sum of $150,000.00, 1/3 of which was distributed to Calahan as attorney's fees under plaintiff's contingency agreement with Calahan.
On December 4, 1992, attorney Shea intervened, claiming legal subrogation to Martin's rights and against the defendants for attorney's fees in the amount of one-third (1/3) of any recovery. Ronald C. Martin, P. Charles Calahan, and Scottsdale Insurance Co. were all named defendants in the intervention.
Shea's intervention was opposed by Calahan, who moved for its dismissal ex parte on December 10, 1992. This ex parte order was signed on December 13, 1992, two days before Calahan filed the Scottsdale-Martin release on December 15 in the record; on that same day, Calahan filed a motion to dismiss Martin's case against Scottsdale and Royal Motel & Hotel, Inc.
A different judge signed the dismissal on December 17, 1992, provoking Shea to file an untimely motion for new trial on January 5, 1993. When this motion was denied January 13, 1993, Shea suspensively appealed the decision on January 29, 1993, but did not file a brief because on February 1, 1993, the trial judge who signed the sua sponte December 10, 1992, ex parte dismissal of Shea's intervention recalled it in an attempt to resuscitate Shea's intervention so that evidence could be taken to determine whether Shea was entitled to a portion of the fees received by Calahan. The February 1993 order explicitly noted that the December 10 "Intervention should not have been dismissed ex parte."
After more than a year of pre-trial practice, the merits of Shea's intervention petition were heard on January 25, 1995. On May 8, 1995, the trial court awarded Shea $25,000.00 in legal fees, plus interest from the date of judicial demand. Scottsdale, Martin, and Calahan were found jointly, severally, and solidarily liable for the payment of such fees; additionally, Calahan and Martin were ordered to fully indemnify Scottsdale. This appeal followed.

ARGUMENTS
Both Scottsdale and Calahan insist that La.Code Civ.P. art. 1951 prohibited the court from recalling and vacating its ex parte order dismissing Shea's intervention petition. Alternatively, Scottsdale contends that the trial court erred in finding Scottsdale liable to Shea for attorney's fees and in holding Scottsdale solidarily liable for 100% of the $25,000.00 fee award. Calahan failed to file an appellate brief.

*161 LAW & DISCUSSION

This conflict arises from the trial court's having rendered two conflicting orders concerning Shea's intervention. Nearly two months after he dismissed Shea's intervention petition via an ex parte order, the trial court replaced it with a second order recalling and vacating the first. The parties contest which of these conflicting judgments supersedes the other.
In its appeal, Scottsdale claims that the trial court substantively amended its first judgment in violation of La.Code Civ.P. art. 1951, which provides:
A final judgment may be amended by the trial court at any time, with or without notice, on its own motion or on motion of any party:
(1) To alter the phraseology of the judgment, but not the substance; or
(2) To correct errors of calculation.
(Emphasis ours.)
Trial courts may substantively amend judgments only upon a party's timely filed: (1) new trial motion, (2) action for nullity, or (3) appeal. Hurst v. Ricard, 558 So.2d 1269 (La.App. 1 Cir.), writ denied, 559 So.2d 1378 (La.1990). That is, where substantive changes need to be made to a judgment, the proper recourse is a timely application for nullity, new trial, or appeal. Villaume v. Villaume, 363 So.2d 448 (La. 1978); Hebert v. Hebert, 351 So.2d 1199 (La. 1977); Brown v. Brown, 550 So.2d 815 (La. App. 2 Cir.1989). Absent a timely filed new trial motion or perfected appeal, the trial court may not alter a judgment's substance. Watson v. Nile, 591 So.2d 1343 (La.App. 4 Cir. 1991). Thus, when a judgment is substantively amended without the granting of a new trial or perfected appeal, the amended judgment is null. Pringle Assoc. Mortgage Corp. v. Cox, 234 So.2d 854 (La.App. 1 Cir. 1970), affirmed, 258 La. 499, 246 So.2d 841 (1971).
In this case, we observe that intervenor Shea timely appealed the trial court's ex parte order of dismissal. It is true that appellant did not post security, notwithstanding his having sought a suspensive appeal, since the trial court, having signed the second ex parte order repudiating the first, did not sign the order appellant prepared for this purpose. However, this fact does not mean that Shea forfeited his rights to an appeal. The trial court did not deny Shea's motion for suspensive appeal, but explicitly only declined to process it. In view of the fact that Scottsdale and all of the other litigants have been aware of Shea's continuing protestations from the outset, punishing the intervenor and rewarding his adversaries would be antithetical to our obligation as an appellate court to render a "judgment which is just, legal, and proper upon the record on appeal." La.Code Civ.P art. 2164. We will treat plaintiff's appeal as a devolutive one, since there is no question but that he filed his appeal within sixty (60) days of the erroneous judgment which aggrieved him in the first place. See Baton Rouge Bank & Trust Co. v. Coleman, 582 So.2d 191 (La.1991) (untimely suspensive appeals filed within delays for devolutive appeal treated as devolutive appeal).

Scottsdale's Liability
We turn next to Scottsdale's argument that the trial court erred in holding it solidarily liable with Calahan for 100% of the damages allegedly sustained by Shea.
The primary effect of solidary liability is that any tortfeasor may be compelled to pay the entire judgment. La.Civ.Code art. 1794. Touchard v. Williams, 617 So.2d 885 (La.1993), citing Joseph v. Ford Motor Co., 509 So.2d 1 (La.1987). Citing La.R.S. 37:218, Scottsdale initially argues that it should not be held liable at all because it has already tendered the settlement proceeds to plaintiff and attorney Calahan.
La.R.S. 37:218 provides in pertinent part:
Sec. 218. Contract for fee based on proportion of subject matter; stipulation concerning compromise, discontinuance, or settlement
A. By written contract signed by his client, an attorney at law may acquire as his fee an interest in the subject matter of a suit, proposed suit, or claim in the assertion, prosecution, or defense of which he is employed, whether the claim or suit be for money or for property. In such contract, *162 it may be stipulated that neither the attorney nor the client may, without the written consent of the other, settle, compromise, release, discontinue, or otherwise dispose of the suit or claim. Either party to the contract may, at any time, file and record it with the clerk of court in the parish in which the suit is pending or is to be brought or with the clerk of court in the parish of the client's domicile. After such filing, any settlement, compromise, discontinuance, or other disposition made of the suit or claim by either the attorney or the client, without the written consent of the other, is null and void and the suit or claim shall be proceeded with as if no such settlement, compromise, discontinuance, or other disposition had been made.

* * * * * *
(Emphasis ours.)
Scottsdale maintains that La.R.S. 37:218 provides a lien against the proceeds of the settlement only, and therefore its having parted with the settlement funds absolves it of any personal liability. We cannot agree that La.R.S. 37:218 only gives rise to in rem liability.
The obvious intent of La.R.S. 37:218 is to prevent a client's discharging an attorney and thereby depriving the attorney of his earned fee. Therefore, if the attorney with a written contingency fee contract bearing the no consent stipulation `file(s) and records it with the clerk of court in the parish in which the suit is pending ...', then a defendant who disburses the settlement proceeds without ascertaining and paying the fee to which the attorney is due, will do so to his prejudice.
Scott v. Kemper Ins. Co., 377 So.2d 66, 70 (La.1979) (On Rehearing).[1]
Alternatively, Scottsdale suggests that because it did not "conspire" with Calahan or Martin to damage Shea, it should not have been held solidarily liable. In support of this suggestion it refers to the language of La.Civ.Code art. 2324, which provides:
Art. 2324. Liability as solidary or joint and divisible obligation
A. He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.
B. If liability is not solidary pursuant to Paragraph A, or as otherwise provided by law, then liability for damages caused by two or more persons shall be solidary only to the extent necessary for the person suffering injury, death, or loss to recover fifty percent of his recoverable damages; however, when the amount of recovery has been reduced in accordance with the preceding Article, a judgment debtor shall not be liable for more than the degree of his fault to a judgment creditor to whom a greater degree of fault has been attributed. Under the provisions of this Article, all parties shall enjoy their respective rights of indemnity and contribution. Except as described in Paragraph A of this Article, or as otherwise provided by law, and hereinabove, the liability for damages caused by two or more persons shall be a joint, divisible obligation, and a joint tortfeasor shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person's insolvency, ability to pay, degree of fault, or immunity by statute or otherwise.
(Emphasis ours.)
We decline to interpret the concept of solidary liability to so narrowly limit its application. Principles of solidary liability apply to cases of intentional tort and negligence alike. See, e.g., Dixie Drive It Yourself v. American Beverage Co., 242 La. 471, 137 So.2d 298, 301 (1962) ("[w]hen the actionable negligence of two tortfeasors contributes in causing harm to a third party, each of them is responsible for the damage. They are solidarily liable").
*163 Finally, we turn to Scottsdale's argument that even if it is solidarily liable with Calahan, it should not have been held solidarily liable with him for the full 100% of Shea's fee. This argument is grounded in La.Civ. Code art. 2324. In Touchard v. Williams, the Supreme Court described the meaning of La.Civ.Code art. 2324:
Judgment debtors are no longer exposed to solidary liability for 100% of the judgment creditor's damages except where the joint tortfeasors commit "an intentional or wilful act." Instead, a judgment debtor's exposure is limited, in the absence of a greater than 50% assignment of that debtor's fault, to fifty percent of the plaintiff's "recoverable damages."

Touchard, 617 So.2d at 891.
Scottsdale's theory might be persuasive were La.R.S. 37:218 not so specific and had Scottsdale not so clearly intended to exclude Shea from the proceeds of the settlement. However, being the more specific provision, La.R.S. 37:218 is controlling. See generally, State in Interest of A.C., 93-1125 (La. 1/27/94); 643 So.2d 719 (on original hearing). That statute, quoted above, explicitly provides that any settlement, compromise or other disposition that fails to take into account a legal services contract recorded in accordance with La.R.S. 37:218 "is null and void and the suit or claim shall be proceeded with as if no such settlement, compromise, discontinuance or other disposition had been made." Because the settlement and dismissal to which Scottsdale was a party failed to take into account Shea's duly recorded fee agreement, they are null and void, at least as to Shea's claim for legal services rendered. When Scottsdale disbursed the settlement proceeds without ascertaining and paying Shea the fee to which he was due, the insurer did so at its own prejudice. Scott v. Kemper Ins. Co., 377 So.2d 66.[2]

CONCLUSION
For the foregoing reasons, we affirm the conclusion of the trial court that attorney Shea's intervention remains viable and that Scottsdale, Calahan, and client Martin share in responsibility for Shea's damages.
Additionally, we hold that Scottsdale is solidarily liable for the full 100% of Shea's losses, including interest. Scottsdale had been familiar with Shea's involvement with the litigation since its inception when Shea initially filed suit in plaintiff's behalf and is chargeable with knowledge of Shea's having filed a properly executed lien on October 13, 1992. Scottsdale could have extricated itself from the current dispute by simply following its usual practice of issuing the settlement check to the claimant and both attorneys, leaving it to them to divide the money.
Defendants are cast with all costs of these proceedings.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[1] See also, Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102, 117 (La.1978):

Compliance with the statute would result in the creation of a cause of action against the client and the opposing party' for such a fee as is legal and is earned in the event a settlement or other disposition results without the consent of the lawyer.
[2] Furthermore, Scottsdale would be solidarily liable with Calahan for the full 100% of Shea's damages even if La.Civ.Code art. 2324(B) was applicable. Negotiable instruments, including checks, are redeemable for cash exclusively by payees to whom they are paid and for whom they are intended. La.R.S. 10:3-110. Because Scottsdale's settlement check was payable to the order of plaintiff and attorney Calahan only and to the exclusion of Shea. Scottsdale cannot now claim to have lacked the intent to exclude Shea from the settlement proceeds. The insurer would be 100% solidarily liable with its fellow tortfeasors for the losses sustained by Shea because the exclusion of Shea was both "intentional and willful," thus precluding any mitigation under La.Civ.Code art. 2324(B).