# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 04-0757


**P.G. DINERS, INC.**

**VERSUS**

**CAT SCALE COMPANY AND
LOVE'S COUNTRY STORES, INC.**


************

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT,
PARISH OF CALCASIEU, NO. 00-2526,
HONORABLE ROBERT WYATT, DISTRICT JUDGE

************

## JIMMIE C. PETERS
## JUDGE

************

Court composed of Chief Judge Ulysses G. Thibodeaux and Judges Jimmie C. Peters and Michael G. Sullivan.


**AFFIRMED.**

**Kevin L. Camel**
**Cox, Cox, Filo & Camel**
**723 Broad Street**
**Lake Charles, LA 70601**
**(318) 436-6611**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
  **P.G. Diners, Inc.**

**Mark R. Pharr, III**
**D. Patrick Daniel, Jr.**
**Galloway, Johnson, Tompkins, Burr & Smith**
**110 East Kaliste Saloom Road, Suite 201**
**Lafayette, LA 70508**
**(337) 235-7110**
**COUNSEL FOR DEFENDANT/APPELLEE:**
  **Love's Country Stores, Inc.**

**Frederic T. LeClercq**
**Deutsch, Kerrigan & Stiles**
**755 Magazine Street**
**New Orleans, LA  70130-3672**
**(504) 581-5141**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **CAT Scale Company**

PETERS, J.

P.G. Diners, Inc. appeals the trial court's grant of motions for summary judgment in favor of Love's Country Stores, Inc. and CAT Scale Company, dismissing its claim for damages against the two defendants. For the following reasons, we affirm.

## SCOPE OF REVIEW

This court reviews summary judgments *de novo* applying the same criteria as the district court in determining whether summary judgment is appropriate. *Schroeder v. Bd. of Supervisors of La. State Univ.*, 591 So.2d 342 (La.1991). In *Babin v. Winn-Dixie Louisiana, Inc.*, 00-0078, pp. 3-4 (La. 6/30/00), 764 So.2d 37, 39-40, the Louisiana Supreme Court addressed the conditions under which summary judgment should be granted, as follows:

> A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ. P. art. 966(B). This article was amended in 1996 to provide that "summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action . . . The procedure is favored and shall be construed to accomplish these ends." La.Code Civ. P. art. 966(A)(2). In 1997, the legislature enacted La.Code Civ. P. art. 966(C)(2), which further clarified the burden of proof in summary judgment proceedings, providing:

> > The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

This amendment, which closely parallels the language of *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), first places the burden of producing evidence at the hearing on the motion for summary judgment on the mover (normally the defendant), who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent's case. At that point, the party who bears the burden of persuasion at trial (usually the plaintiff) must come forth with evidence (affidavits or discovery responses) which demonstrates he or she will be able to meet the burden at trial. See MARAIST AND LEMMON, LOUISIANA CIVIL LAW TREATISE: CIVIL PROCEDURE, § 6.8 (1999). Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. *Hardy v. Bowie*, 98-2821 (La.9/8/99), 744 So.2d 606; *Hayes v. Autin*, 96-287 (La.App. 3d Cir.12/26/96), 685 So.2d 691, *writ denied*, 97-0281 (La.3/14/97), 690 So.2d 41.

Additionally, in *King v. Stranco, Inc.*, 00-2003, 00-2004, p. 4 (La.App. 1 Cir. 11/9/01), 818 So.2d 48, 50-51, the first circuit explained:

> The amended LSA-C.C.P. art. 966 brings Louisiana's standard for summary judgment closely in line with the federal standard under Fed.R.Civ.P. 56(c). *Independent Fire Ins. Co. v. Sunbeam Corp.*, 99-2181, 99-2257, p. 7 (La.2/29/00), 755 So.2d 226, 231, *quoting Hardy v. Bowie*, 98-2821, p. 5 (La.9/8/99), 744 So.2d 606, 610. The federal standard was summarized by the fourth circuit in *Huber v. Liberty Mut. Ins. Co.*, 2000-0679, p. [7] (La.App. 4th Cir.2/7/01), 780 So.2d 551, 555:

> > Under Fed.Rule Civ.Proc. 56, when the nonmoving party bears the burden of proof at trial, there is no genuine issue of material fact if the nonmoving party cannot come forward at the summary judgment stage with evidence of sufficient quantity and quality for a reasonable juror to find that the party can satisfy his substantive evidentiary burden. In construing the federal summary judgment rule, the United States Supreme Court held that summary judgment shall be granted where the evidence is such that it would require a directed verdict for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If a defendant in an ordinary civil case moves for summary judgment or a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the non-moving

2

party on the evidence presented. *Id.* The *Anderson* court further held that the mere existence of a scintilla of evidence on the non-moving party's position would be insufficient; there must be evidence on which the jury could reasonably find for that party. In *Lujan v. National Wildlife*, 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), the court held that Fed.Rule Civ.Proc. 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof. *Berzas v. OXY USA, Inc.*, 29,835 (La.App. 2 Cir. 9/24/97), 699 So.2d 1149, 1152-53; *Martello v. State Farm Fire and Cas. Co.*, 96-2375 (La.App. 1 Cir. 11/7/97), 702 So.2d 1179, 1183-84[, *writ denied*, 98-0184 (La. 3/20/98), 715 So.2d 1215].

## ISSUE ON APPEAL

P.G. Diners, Inc. (Diners), a small Calcasieu Parish, Louisiana restaurant chain, brought this suit asserting it sustained damages to its business as a result of the activities of two multi-state corporations, Love's Country Stores, Inc. (Love's) and CAT Scale Company (CAT). In its petition naming these corporations as defendants, Diners alleged that the two corporations "conspired to misappropriate confidential and proprietary information supplied by [Diners]."

In response to the petition, the defendants filed, among other pleadings, exceptions of prescription and, alternatively, motions for summary judgment. The trial court granted both the exceptions of prescription and the motions for summary judgment. In granting the exceptions, the trial court concluded that the cause of action asserted by Diners under the Louisiana Unfair Trade Practices Act (LUTPA) had prescribed. In granting the motions for summary judgment, the trial court concluded that Diners could not carry its burden of proof at trial to establish that Love's and CAT conspired to misappropriate its confidential and propriety

3

information.  At both the trial court hearing and on appeal, Diners asserts that the prescription issue is of no import because it never asserted any claim pursuant to LUTPA.  Its only claim, according to Diners, is rooted in Louisiana tort law, particularly La.Civ.Code art. 2315.  Thus, on appeal, Diners does not question the trial court's ruling on the prescription exceptions.  Rather, it states in its sole assignment of error:

> The trial court erred in granting summary judgment in a case involving substantial circumstantial evidence in support of plaintiff's claims and requiring plaintiff to produce a whistleblower witness to avoid dismissal on summary judgment.  In doing so, the trial court held plaintiff to a burden of proof on a motion for summary judgment that was higher than plaintiff's burden at trial.

In addressing the alternate motions for summary judgment, the trial court did not appear at all satisfied that Diners maintained any cause of action outside of LUTPA.  We have the same difficulty.  In its oral reasons for judgment on the prescription issue, the trial judge identified the prescribed cause of action under LUTPA as "misappropriation or disclosure of confidential and proprietary information."  Diners used this language in its pleadings as well as in its trial briefs in stating its case, although it did expand on the language by asserting an element of conspiracy.

Although apparently not fully satisfied that Diners had a claim independent of LUTPA, the trial court still rendered judgment on the alternate motions for summary judgment as if one did exist.  Earlier in the lower court proceedings, a different judge had overruled a previous exception of no cause of action and motion for summary judgment filed by CAT, but it cannot be determined from the record whether that judge did so thinking Diners was asserting a LUTPA claim or a claim of a different

4

nature. This state of the record explains our uncertainty as to whether Diners has a cause of action independent of LUTPA for misappropriation or disclosure of confidential and proprietary information. However, in affirming the trial court's grant of the summary judgments, we find it unnecessary to precisely define the cause of action in this case.

Diners' burden of proof under the allegations of its petition, regardless of how the cause of action might be described, requires it to establish that there was a misappropriation or disclosure of confidential and proprietary information. From the record, we know the nature of the confidential and proprietary information, and the material fact issue to be resolved is whether it was misappropriated or disclosed. Accordingly, we prefer to rest our decision on a resolution of the above-quoted assignment of error as framed by Diners in its appeal.

**DISCUSSION OF THE RECORD**

The litigation arises because, in 1998, construction began on two truck stops, King's Travel Plaza and Love's Travel Center, directly across from each other on Louisiana Highway 383 (La. 383) immediately north of that highway's intersection with Interstate 10 (I-10) near Iowa, Louisiana. King's Travel Plaza is owned by Diners, and Love's Travel Center is owned by Love's. Diners was the first to conceive the idea of placing a truck stop at the location, but Love's opened its facility first. Diners asserts in this suit that the decision by Love's to build at this location was prompted by its receipt of confidential proprietary information that it had previously provided to CAT.

The record establishes that in the mid-1990's, Diners began investigating the possibility of constructing a truck stop along I-10 in Calcasieu Parish and ultimately

5

settled on a location on the north side of I-10 at its intersection with La. 383. However, before reaching that decision, Diners commissioned a market study for this location. This occurred in 1996, and the information received in this study included demographic research, traffic counts, competitor surveys, and a market analysis. With this information in hand, Diners leased property at the intersection and contracted with a builder to construct the truck stop.

Recognizing the importance of a weighing scale located at a truck stop location, Diners also contacted CAT to discuss the possibility of having CAT install a weighing scale at the truck stop. CAT, one of the largest operators of truck scales in the industry, leases space at truck stops, installs scales, and shares the income with the truck stop owner. At some point in its negotiation with CAT, Diners provided CAT with its site plan and traffic count information. Both Diners and CAT considered the shared information to be confidential, and it is this information that Diners asserts was shared by CAT with Love's.

Diners and CAT apparently reached a tentative oral agreement, and, in August of 1997, Diners executed CAT's standard form lease and returned it to CAT for final action. Almost a year later, when CAT had failed to returned the completed lease, Diners wrote to CAT and inquired of its status. CAT responded by letter, informing Diners that it had committed to place its scale at a truck stop planned by Love's at the same location. Diners then granted a lease to another scale company and completed construction of King's Travel Plaza.

The defendants' position in opposition to Diners' suit can be found in the attachments to the motions for summary judgment, including the affidavit and deposition of Gregory Love, the general manager of Love's. Mr. Love stated that in

6

1996 Love's decided to add approximately fifty new stores across the country, with four to be located in Louisiana. As the individual in charge of site selection, acquisition of property, preparation for construction, and overseeing actual construction of new Love's stores, he made the recommendation in early 1998 that Love's locate stores in Port Allen and Iowa, Louisiana. According to Mr. Love, he based the decision to locate in Iowa upon his own evaluation of the area, taking into consideration the truck traffic on I-10 and his eighteen years of experience in the industry.

According to Mr. Love, Love's obtained its own demographic study report for the Iowa site from Precision Marketing Group, but it was after the decision had been made to build at that location and was for the purpose of convincing Hardee's, a fast-food franchise, to locate at the location. Mr. Love asserted that he had never seen Diners' traffic count study or any other confidential information regarding it.

Gary Lafollette, vice president of operations of CAT, in both affidavit and deposition, denied that his company ever relayed any proprietary or confidential information to Love's that it received from Diners. He acknowledged that CAT did significant business with Love's, which business relationship it wished to maintain.

Diners admitted in a response to an interrogatory that it suffered no loss of revenue as a result of CAT's decision to locate with Love's. Additionally, in responses to interrogatories propounded in mid-2001, Diners responded to a question asking it to explain its allegation that Love's built its store across the highway because it had the benefit of Diners' plans and traffic study, and its explanation was:

> Based on the sequence of events, it is apparent that Love's Country Stores decided to purchase property directly across the highway from King's Travel Plaza after learning of P.G. Diners' plans to build a truck stop at that location.

7

This "sequence of events" argument constitutes Diners' sole argument in opposition to the motions for summary judgment. In that argument, Diners asserts that the existing circumstantial evidence constitutes an inference that Love's decided to build its facility only after gaining access to Diners' traffic count and plans.

**OPINION**

It is well established that circumstantial evidence can be used to defeat a motion for summary judgment. *See Indep. Fire Ins. Co. v. Sunbeam Corp.*, 99-2181, 99-2257 (La. 2/29/00), 755 So.2d 226. "Circumstantial or indirect evidence is evidence which, if believed, proves a fact and from that fact you may logically and reasonably conclude that another fact exists." *Id*. at n.6. The question is whether Love's decision to build a truck stop across the highway from Diners' planned building of its truck stop is a fact from which it can be logically and reasonably concluded that Love's and CAT misappropriated Diners' idea, its traffic study, or its plans. We conclude that it is not, and, as such, Diners has not established the existence of an essential element of its case.

Simply stated, Diners has known of Love's presence across La. 383 from its location since 1998, and this case has been pending since May 10, 2000. During that time, Diners pursued extensive discovery. It deposed numerous witnesses and obtained access to the available documentary evidence. Affidavits and exhibits have been produced and interrogatories answered. Yet, despite the evidence produced, Diners has nothing to support its conspiracy theory or its theory that either defendant used its idea, its site plans, or its traffic study to cause Love's to build its truck stop. Its only argument is that the defendants' denials of impropriety are incredible, based solely on the timing of Love's construction. Such allegation does not constitute

8

factual support sufficient to establish that Diners will be able to satisfy its evidentiary burden of proof at trial. Thus, there is no genuine issue of material fact, and summary judgments were properly granted.

## DISPOSITION

For the foregoing reasons, we affirm the judgment of the trial court dismissing the demands of P.G. Diners, Inc. against Love's Country Stores, Inc. and CAT Scale Company. We assess all costs of this appeal to P.G. Diners, Inc.

**AFFIRMED.**