# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-0098


**P. CHARLES CALAHAN, APLC, ET AL.**

**VERSUS**

**SCOTTSDALE INSURANCE COMPANY**


************

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT,
PARISH OF IBERIA, NO. 95958,
HONORABLE LORI LANDRY, DISTRICT JUDGE

************

## JIMMIE C. PETERS
## JUDGE

************

Court composed of Jimmie C. Peters, Michael G. Sullivan, and Elizabeth A. Pickett, Judges.

**REVERSED AND REMANDED.**

**P. Charles Calahan**
**Attorney at Law**
**Post Office Box 9547**
**New Iberia, LA  70562**
**(337) 365-8046**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
      **P. Charles Calahan, APLC**

**Kay A. Theunissen**
**Mahtook & Lafleur**
**Post Office Box 3089**
**Lafayette, LA  70502**
**(337) 266-2189**
**COUNSEL FOR DEFENDANT/APPELLEE:**
      **Scottsdale Insurance Company**

PETERS, J.

The plaintiff, P. Charles Calahan, A Professional Law Corporation (Law Corporation), appeals the grant of a motion for summary judgment and exception of res judicata dismissing its claims for damages against Scottsdale Insurance Company (Scottsdale). For the following reasons, we reverse and remand for further proceedings.

## DISCUSSION OF THE RECORD

The wrongful seizure suit at issue in this appeal was filed June 7, 2001.[1] Scottsdale responded to the Law Corporation's claims by filing, among other pleadings, a motion for summary judgment and exception of res judicata. By a judgment rendered and signed on December 10, 2003, the trial court granted Scottsdale's motion and exception and dismissed the Law Corporation's suit. The Law Corporation appealed that judgment, asserting two assignments of error.[2]

Scottsdale attached twenty exhibits to its motion for summary judgment, and these exhibits establish certain factual and procedural aspects of the litigation which are not in dispute. Specifically, these exhibits establish that the origin of the current litigation can be traced to two prior suits: (1) a personal injury suit filed by Ronald C. Martin against a number of defendants, including Scottsdale, in the Sixteenth Judicial District on September 25, 1992, and (2) a garnishment suit filed by Scottsdale against P. Charles Calahan, individually, on February 15, 2000.

### Martin Suit

In this litigation, Ronald C. Martin brought suit to recover damages he

---

[1]P. Charles Calahan was a co-plaintiff in the original petition. However, by judgment dated November 8, 2002, the trial court dismissed his claims against Scottsdale. He did not appeal that judgment.

[2]The long delay between rendition of the judgment and this appeal being considered was caused by protracted litigation after judgment addressing the validity of the appeal. However, that litigation has no effect on the issues now before this court.

sustained in a June 20, 1992 New Iberia, Louisiana hotel fire. On December 3, 1992, Scottsdale tendered a check to Martin and his then attorney, Calahan, in settlement of all claims. Martin had been represented at different times in the litigation by Calahan and by the law firm of Landry and Shea. This dual representation resulted in a post-settlement legal-fee dispute involving Martin, Calahan, Landry and Shea, and Scottsdale. The trial court resolved this dispute in a May 8, 1995 judgment wherein it awarded a $25,000.00 judgment in favor of Landry and Shea, and against Martin, Calahan, and Scottsdale, jointly, severally, and in solido. Additionally, the trial court granted indemnity relief for the judgment liability to Scottsdale against Martin and Calahan. The 1995 judgment provided in pertinent part as follows:

> IT IS ORDERED ADJUDGED AND DECREED that there be judgment herein in favor or [sic] LANDRY AND SHEA and against RONALD C. MARTIN, P. CHARLES CALAHAN, and SCOTTSDALE INSURANCE COMPANY, in the full and true sum of TWENTY FIVE THOUSAND ($25,000.00) DOLLARS, jointly, severally and in solido, plus interest from the date of judicial demand.

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of SCOTTSDALE INSURANCE COMPANY and agains [sic] RONALD C. MARTIN and P. CHARLES CALAHAN, jointly, severally, and in solido, granting full and complete indemnity to SCOTTSDALE INSURANCE COMPANY for all amounts it it [sic] obligated to pay LANDRY AND SHEA;

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of SCOTTSDALE INSURANCE COMPANY and against RONALD C. MARTIN and P. CHARLES CALAHAN in the amount of SEVEN THOUSAND SIX HUNDRED THIRTY EIGHT [DOLLARS] AND NINETEEN CENTS ($7,638.19), representing defense costs and attorneys fees incurred by SCOTTSDALE INSURANCE COMPANY in defense of this suit.

Scottsdale appealed the trial court's ruling finding it solidarily liable with Martin and Calahan, and this court rejected that appeal. *See Martin v. David*, 95-1411 (La.App.

2

3 Cir. 7/31/96), 685 So.2d 158,[3] *writ denied*, 96-2184 (La. 11/15/96), 682 So.2d 766. Although Calahan obtained an order of appeal, he abandoned it by failing to file a brief.

### *Scottsdale Suit*

On May 2, 1997, Landry and Shea provided the Iberia Parish Clerk of Court with a written acknowledgment that Scottsdale had satisfied the May 8, 1995 judgment, which was filed in the mortgage records of Iberia Parish, insofar as Landry and Shea's claim was concerned, and authorized the clerk of court to partially cancel the judgment against Scottsdale. Neither Martin nor Calahan contributed to the satisfaction of the judgment. Pursuant to the indemnity provisions of the May 8, 1995 recorded judgment, which had not been paid, Scottsdale, on February 15, 2000, filed a garnishment petition.

The petition alleged that Scottsdale was the judgment creditor of P. Charles Calahan and named Regions Bank in New Iberia, Louisiana, as garnishee. On March 8, 2000, Calahan filed a rule to show cause why the garnishment should not be quashed, why the underlying judicial mortgage associated with the intervention judgment should not be cancelled, and why sanctions should not be imposed against Scottsdale. This pleading did not mention the Law Corporation. Calahan's basic argument in support of the rule was that the July 31, 1996 opinion of this court had reversed the indemnity and reimbursement judgment in favor of Scottsdale.

On March 9, 2000, Calahan, as the sole petitioner, filed a petition for an injunction against Scottsdale. In that petition, Calahan alleged that he was "the

_____

[3]This opinion contains a more complete procedural history of the litigation to the point of the judgment in favor of the Landry and Shea law firm, and reference is made thereto for the more specific aspects of the procedural history. Additionally, both Scottsdale and Calahan appealed a procedural aspect of the trial court's judgment which was also rejected by this court in that opinion and which is not pertinent to the litigation now before us.

custodian of certain checking accounts at Regions Bank in the name of P. CHARLES CALAHAN, ATTORNEY AT LAW and/or P. CHARLES CALAHAN, ATTORNEY AT LAW, A PROFESSIONAL LAW CORPORATION," and asked for a temporary restraining order and preliminary injunction against Scottsdale to prevent it from seizing those accounts. Calahan's demand for injunctions was founded entirely upon the allegation that the "garnishment of the above mentioned checking accounts" was "unlawful" because this court had reversed the indemnity judgment against him. The trial court granted a temporary restraining order and set a March 21, 2000 hearing date for consideration of the request for preliminary injunction.

At the hearing, the trial court orally rendered judgment as follows:

The Court will deny the Motion for a Preliminary Injunction.

The Court will award attorney's fees for filing of this motion. Said attorney's fees in the amount of $250.00.

The Court will issue written reasons for its denial of the preliminary injunction.

In addition, the Court will deny the Motion to Quash the Garnishment and Cancellation of Mortgage.

The trial court's written judgment, signed the day of the hearing, provided in pertinent part as follows:

It is ordered that defendant's motion for preliminary injunction is hereby denied.

It is further ordered that defendant's motion to quash garnishment is hereby denied. The Court will issue written reasons for judgment.

It is further ordered that plaintiff is awarded Two Hundred Fifty and 00/100 ($250.00) Dollars attorney's fees.

The trial court issued written reasons for judgment on May 4, 2000. In the written reasons, the trial court noted that, on March 21, 2000, it considered Calahan's

4

motions for a preliminary injunction, to quash the garnishment, to cancel the judicial mortgage, and for sanctions. The trial court further noted that it also considered Scottsdale's motion to prohibit Calahan from liquidating bank accounts or, in the alternative, to increase his bond. However, in the written reasons, the trial court addressed only the issue raised by Calahan concerning the effect of this court's July 31, 1996 opinion. In addressing this issue, the trial court stated the following:

> Scottsdale's garnishment rests upon this courts [sic] finding that they [sic] could recover over in indemnity from defendant Calahan all amounts paid to Mr. Shea, as the prior counsel for Ronald C. Martin, as well as for its own legal fees and interest. It is this Honorable Court's opinion that the Court of Appeals [sic] did not disturb this portion of the court's judgment.

Neither the judgment nor the reasons for judgment specifically addressed the seizure of the Law Corporation's accounts. Calahan sought a suspensive appeal of this judgment, and the trial court ordered that he provide a surety bond in the amount of $51,000.00.

On May 30, 2000, Regions Bank answered the interrogatories propounded to it by Scottsdale and asserted that it had two accounts in its bank but that both were in the name of the Law Corporation, and not Calahan individually. One was the Law Corporation's general operating account, which, on March 8, 2000, had a balance of $5,267.38 and, on May 25, 2000, had a balance of $5,184.94. The other was the Law Corporation's trust account, which, on March 8, 2000, had a balance of $43,937.55 and, on May 25, 2000, had a balance of $40,053.00. Scottsdale seized the proceeds on deposit in the Law Corporation's operating account.[4]

Calahan responded to this seizure by filing a rule for contempt and a request

---

[4]It is not clear from the record before us exactly what day the seizure occurred, although the original petition in the current litigation suggests that the seizure occurred on May 8, 2000.

5

to have the seized funds released, and, in this June 7, 2000 rule, he named both Scottsdale and Regions Bank as defendants. As was the case with all previous pleadings, the Law Corporation was not a party to this rule, nor did it make an appearance. Basically, Calahan asserted that he had posted a $51,000.00 suspensive appeal bond prior to the seizure and that, therefore, the seizure was illegal. The trial court denied the contempt motion after a June 20, 2000 hearing, finding that the posted suspensive appeal bond was adequate. Calahan appealed this judgment. However, this court, in an unpublished opinion, dismissed the appeal. *See Scottsdale Ins. Co. v. Calahan*, 00-1317 (La.App. 3 Cir. 10/25/00). Calahan acquired a second signed judgment on the contempt issue and attempted a second appeal, which was also dismissed by this court in an unpublished opinion. *See Scottsdale Insurance Company v. Calahan*, 01-350 (La.App. 3 Cir. 5/30/01).

### *Current Suit*

The litigation now before us began on June 7, 2001, when Calahan and the Law Corporation filed a suit for damages against Scottsdale, asserting that Scottsdale wrongfully seized the Law Corporation's accounts in Regions Bank. In the original petition, the plaintiffs again asserted that this court had reversed the indemnity aspects of the May 8, 1995 judgment. According to the petition, the effect of Scottsdale's illegal seizure caused the Law Corporation checks to be dishonored, and, when the checks were dishonored, the electric company servicing the corporate office disconnected power to the structure, causing the computers to crash such that the corporation lost all of the stored material.

Scottsdale answered the suit and, on September 5, 2002, filed an exception of res judicata and a motion for summary judgment, asserting that the claims of both

6

plaintiffs should be dismissed. After an October 25, 2002 hearing, the trial court rendered judgment granting the exception of res judicata as to Calahan and dismissing his claims. In doing so, the trial court did not address the motion or the exception as it pertained to the Law Corporation. The trial court signed a judgement to this effect on November 8, 2002, and Calahan did not appeal this judgment.

On August 4, 2003, Scottsdale filed a second motion for summary judgment directed at the claims of the Law Corporation. The trial court heard this motion as well as the remaining res judicata exception on September 5, 2003, and ruled on the matter on December 10, 2003.

In its December 10, 2003 written reasons for judgment, the trial court found that Scottsdale "has met the burden of showing no genuine issue of material fact and Calahan has failed to show that genuine issues of material fact remain," but considered the Law Corporation's claims pursuant to the exception of res judicata "[b]ased on judicial economy." It then granted Scottsdale's motion for summary judgment and exception of res judicata and signed a judgment to that effect on the same day. It is this judgment that is now before us, and, in its appeal, the Law Corporation asserts two assignments of error:

> 1. The Trial Court erred in finding that P. Charles Calahan, A Professional Law Corporation[,] waived its rights to due process in an executory proceeding against P. Charles Calahan, an individual, to bring a cause of action against Scottsdale Insurance Company in an ordinary proceeding.

> 2. The Trial Court erred in granting *res [j]udicata* by confusing the different juridical entities as being the same entity when the parties were actually different and the issues were different.

## OPINION

The issue now before us is whether the trial court properly dismissed the Law

7

Corporations's action for wrongful seizure based on res judicata principles or for some other reason that entitled Scottsdale to a summary judgment. We will consider the res judicata issue and the summary judgment issue separately.

### Res Judicata Issue

Professional law corporations are authorized by the Louisiana Professional Law Corporations Act, La.R.S. 12:801, *et seq.*, and are subject to all of the general provisions of the Louisiana Business Corporation Law, La.R.S. 12:1, *et seq.*, except when those general provisions are inconsistent with the specific provisions found in La.R.S. 12:801, *et seq.*, relating to the fact that a professional law corporation is also governed by the laws related to the practice of law. La.R.S. 12:802. The record in the matter before us establishes that the Law Corporation is a Louisiana professional law corporation, having been incorporated on January 1, 2000.

Louisiana Civil Code Article 24 provides:

> There are two kinds of persons: natural persons and juridical persons.
>
> A natural person is a human being. A juridical person is an entity to which the law attributes personality, such as a corporation or a partnership. The personality of a juridical person is distinct from that of its members.

Thus, by definition, P. Charles Calahan and P. Charles Calahan, A Professional Law Corporation, are separate entities distinct from each other. One is a natural person, and the other is a juridical person, a corporation.

While it appears that Calahan, the natural person, owns stock in the Law Corporation,[5] the Law Corporation is a legal entity separate and distinct from the individuals who comprise it. *See* La.R.S. 12:93-95. Additionally, a right of action

---

[5]The record does not establish the specific ownership of the Law Corporation, although there was an obvious assumption at the trial level that Calahan was the sole owner.

possessed by a corporation lies solely with the corporation, even though only one person owns the stock. *Glod v. Baker*, 02-988 (La.App. 3 Cir. 8/6/03), 851 So.2d 1255, *writ denied*, 03-2482 (La. 11/26/03), 860 So.2d 1135.

With regard to the issue of res judicata, La.R.S. 13:4231 provides:

Except as otherwise provided by law, a valid and final judgment is conclusive *between the same parties*, except on appeal or other direct review, to the following extent:

(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.

(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.

(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action *between them*, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

(Emphasis added.)

In its reasons for judgment, the trial court concentrated on "whether the second action asserts a cause of action that arises out of the transaction or occurrence that was the subject matter of the first action." In framing the issue in this manner, the trial court did not specify which of the prior rulings adverse to Calahan was the "first action" which amounted to an adjudication of the causes of action raised by the Law Corporation and thereby had the effect of res judicata on the Law Corporation's present suit. However, in finding that Scottsdale's seizure of the Law Corporation's accounts was proper, the trial court observed in its reasons for judgment that "P. Charles Calahan was the custodian of the P. Charles Calahan, APLC accounts [the

Law Corporation accounts] during the entirety of the garnishment proceedings and allowing him to raise this issue results in re-litigation of the same issues . . . ."

Calahan had identified himself in his petition for injunction as the custodian of the Law Corporation's checking accounts, and the trial court apparently concluded that this assertion effectively made the Law Corporation a party to that "first action." In doing so, the trial court recognized that La.R.S. 13:4231 requires the element of "identity of parties," but wrongfully applied that element in this case.

When La.R.S. 13:4231speaks of "the same parties" in applying res judicata to a cause of action, it does not necessarily mean that the parties in the first suit have the same physical identity as those in the second suit. *Burguieres v. Pollingue*, 02-1385 (La. 2/25/03), 843 So.2d 1049. All that is required is an "identity of parties," which means that "the parties must appear in the same capacities in both suits." *Id.* at 1054. As previously demonstrated, Calahan and the Law Corporation are two separate persons in the law.

"[A]n action can be brought only by a person having a real and actual interest which he asserts." La.Code Civ.P. art. 681. "[A] domestic corporation . . . has the procedural capacity to sue to enforce its rights in the corporate or company name." La.Code. Civ.P. art. 690. If the question in the instant case were whether Calahan individually and Calahan as the custodian of the company checking accounts was appearing in the same capacity, there might be an issue of capacity as relates to Calahan, but that does not create an issue of capacity as relates to the Law Corporation. The Law Corporation's first and only appearance in this protracted litigation has been in the instant suit.

"There exists an identity of parties whenever the same parties, their successors,

or others appear so long as they share the same 'quality' as parties." *Welch v. Crown Zellerbach Corp.*, 359 So.2d 154, 156 (La.1978). Identity of parties can be satisfied when a privy of one of the parties exists. *Burguieres,* 843 So.2d 1049. In the broadest sense of the term, "privity" is the mutual or successive relationship to the same right of property or such an identification in interest of one person with another as to represent the same legal right. *Noel v. Jumonville Pipe & Machinery Co.*, 245 La. 324, 336, 158 So.2d 179, 184 (1963). "In connection with the doctrine of res judicata, a 'privy' is 'one who, after the commencement of the action, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, purchase or assignment.' Black's Law Dictionary 1200 (6th ed. 1990)." *Five N Co. v. Stewart*, 02-0181, p. 16 (La.App. 1 Cir. 7/2/03), 850 So.2d 51, 61.

In the present case, we are not dealing with an interest or right in property or a credit; we are dealing with a debt. There is no evidence that Calahan's debt as evidenced by the judgment rendered against him has ever in any manner been transmitted to the Law Corporation. Therefore, the Law Corporation cannot be a privy of Calahan with respect to the judgment debt.

Applying the foregoing analysis to the Law Corporation's cause of action, we find that it is not barred by the doctrine of res judicata. Specifically, we find that there has been no prior action to which the Law Corporation was a party in any quality or capacity that would have made the doctrine applicable. *See Burkhalter v. Palmer*, 00-0491 (La.App. 4 Cir. 4/26/00), 764 So.2d 85; *McLean v. Smith*, 593 So.2d 422 (La.App. 1 Cir. 1991).

### *Summary Judgment Issue*

11

In dismissing the Law Corporation's suit, the trial court also granted Scottsdale's motion for summary judgment. We review summary judgments *de novo* applying the same criteria as the trial court in determining whether summary judgment is appropriate. *P.G. Diners, Inc. v. CAT Scale Co.*, 04-0757 (La.App. 3 Cir. 11/10/04), 886 So.2d 1253. Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). "A genuine issue exists where reasonable persons, after considering the evidence, could disagree." *Suire v. Lafayette City-Parish Consol. Gov't*, 04-1459, 04-1460, 04-1466, p. __ (La. 4/12/05), ___ So.2d ___, ___. "A fact is 'material' if it is one that would matter at trial on the merits." *Id.* Summary judgment is appropriate only when it is inevitable that reasonable minds would conclude that there does not exist any genuine issue of material fact and that the mover is entitled to judgment as a matter of law. *Natchitoches Parish Hosp. Serv. Dist. v. Rachal*, 94-995 (La.App. 3 Cir. 2/1/95), 649 So.2d 1152, *writ denied*, 95-0528 (La. 4/7/95), 652 So.2d 1349. If there is any doubt, it should be resolved in favor of denying the motion for summary judgment and in favor of a trial on the merits. *Id.* Bearing in mind the standard governing our review of the trial court's ruling, we will consider whether there is a genuine issue of material fact in dispute and whether Scottsdale is entitled to judgment as a matter of law.

The trial court did not give specific reasons for its grant of a summary judgment, but its general reasons for judgment stressed its observation, which we have already quoted earlier, that Calahan was the "custodian" of the Law Corporation

account "during the entirety of the garnishment proceedings." Even though Calahan's status as custodian of the Law Corporation's accounts is an admission,[6] we fail to see how his being a custodian of those accounts somehow, as a matter of law, makes the Law Corporation liable with or for Calahan as Scottsdale's debtor.

BLACK'S LAW DICTIONARY 384 (6th ed. 1990) defines the term "custodian" as a "[g]eneral term to describe person or financial institution that has charge or custody of property, securities, papers, assets, etc." The record does not establish Calahan's relationship or relationships with the Law Corporation. He could hold any number of positions, including shareholder, director, officer, or custodian of accounts. However, none of these relationships, if they exist, establish the Law Corporation as having become responsible for Calahan's personal obligation to Scottsdale.

We find nothing in the trial court's reasons for judgment to suggest that, in using the term "custodian," it intended to find that the corporate veil of the Law Corporation had been pierced and that it was merely the alter ego of Calahan. In fact, there has been no allegation, no evidence, and no finding that such was the case. In sum, there is no evidence in this record that the Law Corporation has ever become Scottsdale's judgment debtor.

Utilizing garnishment procedure, the judgment creditor, "by petition and after the issuance of a writ of fieri facias, may cause a third person to be cited as a garnishee to declare under oath what property he has in his possession or under his control *belonging to the judgment debtor* and in what amount he is indebted to him . . . ." La.Code Civ.P. art. 2411(A) (emphasis added). The seizure takes effect upon service of the petition, citation, interrogatories, and a notice of seizure. La.Code

---

[6]The status of Calahan appears in the record only by virtue of Calahan having pled it.

13

Civ.P. art. 2411(B)(1).[7]  A wrongful garnishment by a judgment creditor is answerable in damages. *First Nat'l Bank of Commerce v. Boutall*, 422 So.2d 1159 (La.1982). "A garnishment proceeding is a separate and distinct proceeding from the original suit and is between different parties." *Ransome v. Ransome*, 01-2361, p. 8 (La.App. 1 Cir. 6/21/02), 822 So.2d 746, 754.  It is a streamlined legal process for obtaining the seizure of funds of the debtor in the hands of a third party. *Houma Mortgage & Loan Inc. v. Marshall*, 94-0728 (La.App. 1 Cir. 11/9/95), 664 So.2d 1199.  The Law Corporation's petition for damages alleges that Scottsdale's seizure of its property was wrongful because it was not Scottsdale's debtor.

As their briefs before us on this appeal demonstrate, the parties are still arguing over whether the decision in *Martin*, 685 So.2d 158, affirmed or reversed Scottsdale's indemnity judgment against Calahan.  While we do not regard that as a viable argument, it being clear that the indemnity judgment was affirmed, the fact remains that the wrongful seizure suit on appeal is no longer a suit by Calahan.  He was dismissed from the current litigation, and that judgment is final.  The only plaintiff now before this court is the Law Corporation.  Scottsdale has no indemnity judgment against the Law Corporation, and, therefore, whether there exists an indemnity judgment in favor of Scottsdale and against Calahan individually is irrelevant to our disposition of the appeal of the trial court's dismissal of the Law Corporation's demand for damages for wrongful seizure.

The summary judgment evidence in this record contains nothing to indicate that the Law Corporation was a judgment debtor of Scottsdale.  Therefore, we find that the trial court erred in dismissing the Law Corporation's wrongful garnishment suit.

---

[7]The requirement of notice of seizure was added by 2004 La. Acts No. 18, § 1.

**DISPOSITION**

For the foregoing reasons, we reverse the trial court's judgment dismissing the claim for damages filed by P. Charles Calahan, a Professional Law Corporation, and remand the matter to the trial court for further proceedings consistent with this opinion. We tax all costs of this appeal to Scottsdale Insurance Company.

**REVERSED AND REMANDED.**