799 So.2d 1189 (2001)
Frances Turner WEST, on behalf of her Minor Son, Lamareo J. WEST, and Sherry Lambert West, on behalf of her Minor Children, Jemarea Lambert West and Beau Lambert West, Plaintiffs-Appellants,
v.
Johnnie WATSON, Beatrice Watson, Howard Watson, Specialty Risk and Associates, and Lloyd's Underwriters at London, Jointly and in Solido, Defendants-Appellees.
No. 35,278-CA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 2001.
*1190 Davis Law Office, LLC, By: S.P. Davis, Sr., Counsel for Appellants.
Breazeale, Sachse & Wilson, By: W. Brett Mason, Robert W. Fenet, Baton Rouge, Counsel for Appellee, Certain Interested Underwriters at Lloyd's, London.
John C. Turnage, Shreveport, Counsel for Appellee, Johnny Watson.
Before STEWART, PEATROSS & KOSTELKA, JJ.
PEATROSS, J.
This is an appeal from a judgment of the trial court granting Defendant's, Certain Interested Underwriters at Lloyd's, London ("Lloyd's"), Motion for Summary Judgment, thereby dismissing it from the proceedings. The trial court held, as a *1191 matter of law, that no coverage existed for the shooting death of Jimmy Lee West which occurred on the property of the insured. Plaintiffs, Frances Turner West, on behalf of her minor son, and Sherry Lambert West, on behalf of her minor children, appeal. For the following reasons, the judgment of the trial court is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.

FACTS
The undisputed facts indicate that, on August 15, 1999, Johnnie Watson shot Jimmy Lee West and that he died as a result of those injuries. The incident occurred on the property of Beatrice Howard Watson, Johnnie Watson's mother, with whom Johnnie Watson was living at the time of the shooting. Ms. Watson had a homeowner's policy issued by Lloyd's and/or Specialty Risk and Associates and this policy was in effect on the date of the incident.[1]
Plaintiff Frances Turner West filed suit on behalf of her minor son, Lamareo J. West, a product of the marriage between Frances West and the deceased; and Plaintiff Sherry Lambert West filed suit on behalf of her minor children, Jemarea Lambert West and Beau Lambert West, products of the marriage between Sherry West and the deceased. Named defendants were Johnnie Watson, Beatrice Howard Watson, as owner of the property on which the incident occurred, and Lloyd's as Ms. Watson's homeowner liability insurer.
Johnnie Watson answered the suit, asserting that no action by Beatrice Watson or Johnnie Watson was intentional; and, thus, the homeowner's policy provided coverage for any damages stemming from the incident. The pleading specifically states that Johnnie Watson "neither expected nor intended to cause bodily injury to Jimmy Lee West on August 15, 1999."
Lloyd's filed an answer affirmatively pleading that Johnny Watson expected or intended to cause bodily injury to Jimmy Lee West and alleging, therefore, that the homeowner's liability policy in effect would not provide coverage for the incident. The policy specifically provided an exclusion for bodily injury "which is expected or intended by one or more `insureds.'"[2]
Lloyd's then filed a Motion for Summary Judgment asserting that the policy did not provide coverage for damages stemming from the incident because the shooting was intentional. Lloyd's attached the coroner's report and the death certificate showing that Jimmy Lee West died as a result of multiple gunshot wounds, one in the face, one in the abdomen and one in the right arm. Lloyd's asserted that this undisputed evidence showed that Johnny Watson must have known or intended for bodily injury to result from his actions.
Plaintiffs filed an opposition to the Motion for Summary Judgment on the day of the hearing, relying solely on the answer filed by Johnny Watson in which he stated that he did not intend nor expect to cause injury to Jimmy Lee West. Plaintiffs argued that, because Johnny Watson stated in his answer that he did not intend nor expect to cause injury, an issue of fact *1192 existed that precluded this matter from being determined on a summary basis. Plaintiffs attached no affidavits, nor any other documentary evidence, in support of their position that the shooting was unintentional.
Alternatively, Plaintiffs argued that the trial court should have continued the hearing in this matter in order to allow Plaintiffs additional time to depose Johnny Watson. Due to pending criminal proceedings arising out of the shooting, Plaintiffs asserted that they had been unable to take his deposition. Without specifically addressing the oral motion for continuance, the trial court granted the Motion for Summary Judgment, dismissing with prejudice Plaintiffs' claims against Lloyd's. In its oral reasons for judgment, the trial court found that Plaintiffs did not adequately oppose the motion for summary judgment with affidavits or deposition testimony setting forth specific facts, but, instead, relied on the allegations and denials in the pleadings.

DISCUSSION
Either party may move for summary judgment; the plaintiff's motion may be made at any time after the answer has been filed and the defendant's motion may be made at any time. La. C.C.P. art. 966. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, admissions on file and any affidavits show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law.
The burden of proof remains with the mover. If the moving party does not have the burden of proof on the issue at trial, however, and points out that there is an absence of factual support for one or more elements essential to the non-moving party's claim, action or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial; if the non-moving party fails to do so, there is no genuine issue of fact. La C.C.P. art. 967; American Central Insurance Company v. Hilman, 32,315 (La. App.2d Cir.9/22/99), 744 So.2d 190. Article 967 further provides that, once a motion for summary judgment has been made and supported, the party opposing the motion may not rest on mere allegations in the pleadings, but must set forth, by way of affidavit or other receivable evidence, specific facts showing a genuine issue for trial. Osborne v. Vulcan Foundry, Inc., 577 So.2d 318 (La.App. 4th Cir.1991). Finally, the likelihood that a party will be unable to prove his allegations at trial does not constitute a basis for rendering summary judgment. Adams v. Travelers Insurance Company, 420 So.2d 507 (La.App. 2d Cir. 1982), writ denied, 422 So.2d 426 (La. 1982). This is because the function of the court on summary judgment is not to determine the merits of the issues involved, but only whether or not there is a genuine and material factual issue. Jones v. Davis, 233 So.2d 310 (La.App. 2d Cir.1970), writ refused, 256 La. 80, 235 So.2d 101 (La. 1970).
The summary judgment procedure described above includes the parties' use of such evidentiary tools as affidavits and depositions in supporting and opposing motions for summary judgment. With this in mind, we find subsection (C)(1) of article 966 to be critical in this case:

After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted. (Emphasis added.)
Adequate time for discovery is especially crucial to parties opposing motions for summary judgment. These parties must produce evidence of material issues of fact which should be determined by the factfinder *1193 at trial rather than by the trial court on summary judgment. This evidence is gathered during discovery. We find that there was not adequate time for discovery in the case sub judice and that the trial court erred in not granting Plaintiffs' counsel's request for a continuance to allow the taking of Johnnie Watson's deposition.
Plaintiffs' counsel raised the request for a continuance in his brief in opposition of the motion for summary judgment and, again, during the hearing on the motion. The trial court heard remarks from all counsel present at the hearing. Johnnie Watson's counsel in the civil matter joined in Plaintiffs' opposition to the Motion for Summary Judgment and corroborated Plaintiffs' counsel's statements that Johnnie Watson had been unavailable for the taking of his deposition due to the pending criminal proceeding. Plaintiffs' counsel advised the trial court that he had recently spoken with Johnny Watson's criminal defense attorney who had informed him that a plea had been entered in the criminal proceeding and that his client was now available to be deposed.
In response to argument of counsel, the trial court inquired how long the matter had been pending; and, on hearing counsel for Johnnie Watson's response of six or seven months[3], the trial court stated "[s]o it's not terribly old." With that conclusion, we agree. The trial court, however, went on to grant Lloyd's motion for summary judgment, implicitly denying the motion for continuance.
La. C.C.P. art. 1601 provides that a continuance may be granted if there is good ground therefor. We believe that the case sub judice presents a "good" ground for a continuance to allow for adequate discovery. While we recognize that there is no absolute right to delay an action on a motion for summary judgment until discovery is completed, parties must be given a fair opportunity to carry out discovery and present their claim. Coleman v. Acromed Corp., 34,354 (La.App.2d Cir.2/7/01), 779 So.2d 1060, writ denied, 01-0625 (La.4/27/01), 791 So.2d 636. This is not a case involving attempts to delay a decision in a stale claim or where there have been repeated delay tactics on the part of one of the parties. See Coleman v. Acromed Corp., supra; American Bank & Trust Company in Monroe v. Carson Homes, Inc., 344 So.2d 456 (La.App. 2d Cir.1977), writ denied, 346 So.2d 221 (La. 1977). On the contrary, the request for additional time in the case sub judice was reasonable due to Plaintiffs' inability to depose Johnny Watson, whose testimony was critical in opposing Lloyd's Motion for Summary Judgment. While counsel for Plaintiffs could have been more diligent in his efforts to obtain an affidavit or to depose Johnnie Watson, we conclude that his request for additional time in which to procure such evidence should have been granted by the trial court. The granting of Lloyd's Motion for Summary Judgment must, therefore, be reversed and the matter remanded to allow for further discovery.
Since we find reversible error in the trial court's refusal to allow Plaintiffs additional time for discovery, we do not reach the merits of the trial court's ruling on Lloyd's Motion for Summary Judgment.[4]

*1194 DECREE

For the foregoing reasons, the judgment of the trial court granting summary judgment in favor of Defendant Certain Interested Underwriters at Lloyds, London, is reversed. The case is remanded to the trial court for further proceedings in accordance with this opinion. Costs of appeal are assessed to Defendant, Certain Interested Underwriters at Lloyds, London.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION.
NOTES
[1] On March 19, 2001, on Plaintiffs' motion, a judgment of dismissal was entered dismissing Specialty Risk and Associates from the suit.
[2] This provision is known as an intentional injury exclusion, as opposed to an intentional act exclusion. Policy provisions excluding coverage for bodily injury "expected or intended by the insured" refer to whether the injury was expected or intended, not the act that resulted in the injury. Yount v. Maisano, 627 So.2d 148 (La.1993); Breland v. Schilling, 550 So.2d 609 (La.1989).
[3] The petition was filed on July 25, 2000, with the hearing on the motion being held on February 12, 2001.
[4] We note that, generally, the insurer must establish that an exclusion for intentional injury applies. Yount v. Maisano, supra note 2; Breland v. Schilling, supra note 2. Louisiana courts have consistently held that intentional injury exclusions exclude coverage only for those injuries which the insured subjectively desired to inflict, as measured not only by the insured's expression of his intent, but also by all the facts and circumstances bearing on such intent or expectation. Yount v. Maisano, supra note 2; Breland v. Schilling, supra note 2; Norwood v. Van Veckhoven, 34,891 (La. App.2d Cir.6/22/01), 792 So.2d 836; Nelson v. Want Ads of Shreveport, Inc., 31,168 (La. App.2d Cir.10/30/98), 720 So.2d 1280; Hawthorn v. City of Bossier City, 29,621 (La.App.2d Cir.6/18/97), 697 So.2d 680; Bilbo for Basnaw v. Shelter Insurance Company, 96-1476 (La.App. 1st Cir.7/30/97), 698 So.2d 691, writ denied, 97-2198 (La.11/21/97), 703 So.2d 1312.

While one may infer that the act of pointing a loaded gun and shooting another three times speaks for itself in establishing that the shooter intended the act of shooting the victim, the issue in intentional injury cases is not whether the shooter intended to shoot, but what degree of injury was intended or expected by the shooter to result from the act of shooting the victim. (For cases discussing acts of shooting as intentional acts see Freeman v. Bell, 366 So.2d 197 (La.App. 2d Cir. 1978), writ denied, 369 So.2d 151 (La.1979); Barton v. Allstate Insurance Company, 527 So.2d 524 (La.App. 3d Cir.1988), writ denied, 532 So.2d 157 (La.1988); Tobin v. Williams, 396 So.2d 562 (La.App. 3d Cir.1981); Monk v. Veillon, 312 So.2d 377 (La.App. 3d Cir. 1975); Brasseaux v. Girouard, 269 So.2d 590 (La.App. 3d Cir.1972), writs denied, 271 So.2d 262 (La.1973); Hewitt v. Allstate Insurance Company, 98-0221 (La.App. 4th Cir.1/27/99), 726 So.2d 1120; Horde v. Foucha, 396 So.2d 441 (La.App. 4th Cir.1981), writ denied, 401 So.2d 976 (La.1981); Sperli v. Guiterrez, 00-1089 (La.App. 5th Cir.10/18/00), 772 So.2d 805. The inference may also be made that the act of pointing a loaded gun and shooting another three times establishes the intent or expectation that great bodily harm, or death, is substantially certain to occur. Without deciding this question, we simply point out that courts have held the following: When minor bodily injury is intended, and such results, the injury is barred from coverage. When serious bodily injury is intended, and such results, the injury is also barred from coverage; when a severe injury of a given sort is intended, and a severe injury of any sort occurs, then coverage is also barred; but when minor injury is intended, and a substantially greater or more severe injury results, whether by chance, coincidence, accident, or whatever, coverage for the more severe injury is not barred. Yount v. Maisano, supra note 2; Breland v. Schilling, supra note 2; Hawthorn v. City of Bossier City, supra.
While the above-described inquiry is necessarily fact intensive, an insurer may be entitled to summary judgment on this issue in the appropriate case, i.e., where there is no disputed issue of fact as to the intent of the insured. Norwood v. Van Veckhoven, supra and cases cited therein.