SEAN[1] WEISHAR, WIFE OF AND TODD WEISHAR
v.
JENNIFER J. KIM, STATE FARM INSURANCE COMPANY, QUIZCO COMPANIES, L.L.C. AND ALLSTATE INSURANCE COMPANY
No. 2009 CA 0037.
Court of Appeal of Louisiana, First Circuit.
August 4, 2009.
Not Designated for Publication
VALERIE BRIGGS BARGAS, Counsel for Plaintiff-Appellants Shawn and Todd Weishar.
ANDREW W. EVERSBERG, BRAD M. BOUDREAUX, Counsel for Defendant-Appellee Quizco Companies, L.L.C.
Before: KUHN, GUIDRY, and GAIDRY, JJ.
GUIDRY, J., dissents and assigns reasons.
KUHN, J.
A motorcyclist, who was injured when a driver made a left-hand turn across his path of travel, appeals a summary judgment rendered in favor of the driver's employer, holding that the driver was not in the course and scope of her employment at the time the accident occurred. We affirm.

FACTS AND PROCEDURAL HISTORY
On July 4, 2006, William Fairly, a part-time manager of a Quiznos sandwich shop on Perkins Road in Baton Rouge, closed the shop early and asked Jennifer Kim, who worked with him, for a ride to a location in downtown Baton Rouge. Kim agreed to do so.
After Kim left Quiznos, while driving with Fairly as a guest passenger, her vehicle collided with a motorcycle driven by plaintiff-appellant, Todd Weishar, a Baton Rouge City police officer. Weishar and Fairly sustained serious injuries.
Weishar, and his wife, Shawn, subsequently filed a petition for damages naming as defendants, Kim, her liability insurer State Farm Automobile Insurance Company, Quizco Companies, L.L.C. (Quizco) (a limited liability company through which the Quiznos sandwich shop on Perkins Road was owned and operated), and Quizco's liability insurer, Allstate Insurance Company.[2] The Weishars later amended their petition to add Fairly as a defendant. The Weishars averred, among other things, that because Kim was in the course and scope of her employment at the time of the accident, Quizco was vicariously liable for Kim's negligence.
Quizco answered the Weishars' petition, denying liability for their claims. Subsequently, Quizco filed a motion for summary judgment, seeking dismissal from the lawsuit. Following a hearing, the trial court concluded that Kim was not in the course and scope of her employment at the time of the accident and granted summary judgment in favor of Quizco, dismissing the Weishars' claims against the company with prejudice. The Weishars devolutively appeal.

DISCUSSION
On appeal, summary judgments are reviewed de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Lieux v. Mitchell, 06-0382, p. 9 (La. App. 1st Cir. 12/28/06), 951 So.2d 307, 314. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, p. 7 (La. 2/29/01), 755 So.2d 226, 230-231.
The burden of proof on a motion for summary judgment is on the movant. However, if the movant will not bear the burden of proof at trial, the movant is not required to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to provide factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2).
A genuine issue of material fact is a triable issue. More precisely, an issue is genuine if reasonable persons could disagree. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. In determining whether an issue is genuine, courts cannot consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751.
A fact is material when its existence or nonexistence may be essential to a plaintiffs cause of action under the applicable theory of recovery. Facts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute. Jones v. Estate of Santiago, 03-1424, p. 6 (La. 4/14/04), 870 So.2d 1002, 1006 Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Charlet v. Legislature of the State of Louisiana, 97-0212, p. 7 (La. App. 1st Cir. 6/29/98), 713 So.2d 1199, 1203, writs denied, 98-2023, 98-2026 (La. 11/13/98), 730 So.2d 934.
In Ellender v. Neff Rental, Inc., 06-2005, pp. 5-6 (La. App. 1st Cir. 6/15/07), 965 So.2d 898, 901-02, this court outlined the principles to consider when determining vicarious liability:
The principle of vicarious liability ... is derived from [La.] C.C. art. 2320, which provides in part, "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." Under [La.] C.C. art. 2320, an employer can be held liable for an employee's tortious conduct only if the injuring employee is acting within the course and scope of his employment. Spears v. Jones, 2000-2799, p. 4 (La. App. 1 Cir. 2/15/02), 807 So.2d 1182, 1185, writs denied, XXXX-XXXX and XXXX-XXXX (La. 5/3/02), 815 So.2d 106 and 826.
Generally, courts consider four factors when assessing vicarious liability, including whether the tortious act: (1) was primarily employment-rooted; (2) was reasonably incidental to performance of employment duties; (3) occurred during working hours; and (4) occurred on the employer's premises. See LeBrane v. Lewis, 292 So.2d 216, 218 (La. 1974). It is not necessary that each factor is present in each case, and each case must be decided on its own merits. Baumeister v. Plunkett, 95-2270, p. 4 (La. 5/21/96), 673 So. 2d 994, 997.
Under the LeBrane test, the determinative question is whether the employee's tortious conduct was so closely connected in time, place and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interest. Richard v. Hall, XXXX-XXXX, p. 8 (La. 4/23/04), 874 So.2d 131, 139. In a negligence case, as distinguished from an intentional tort case, the court need only determine whether the servant's general activities at the time of the tort were within the scope of employment. Id.
If the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to liability if the act is otherwise within the service. The scope of risks attributable to an employer increases with the amount of authority and freedom of action granted to the servant in performing his assigned tasks. Richard, XXXX-XXXX at pp. 6-7, 874 So.2d at 138.
In hearing the motion for summary judgment, the trial court reviewed the deposition testimony of Kim and Fairly. This evidence established that at the time of the July 4, 2006 accident, Kim was working part-time at the Quiznos located at 7731 Perkins Road. She was scheduled to work that day from 10:00 a.m. to 3:00 p.m., but because business was extremely slow (only three customers) due to the holiday, with the owner's permission, Fairly closed the store at 1:00 p.m.
According to Kim, she did not consider Fairly as her boss but more of an equal employee who, she acknowledged, had more responsibilities than she did. Kim testified that shortly before Fairly closed the store, he told her that his car was in the shop and asked her if she would "mind giving him a ride." She agreed. Kim did not recall if Fairly had indicated whether he was planning to pick up his car at the shop. According to Kim, "part of the reason why I agreed to [give him a ride] was because he told me he knew somebody that could do an oil change for my car because I needed an oil change." Kim described her relationship with Fairly as "somewhere between acquaintance and friend .... I wouldn't say a really close friend, but I considered him more than just a co-worker." When asked whether she felt compelled to give Fairly a ride because he was her supervisor, she replied "No. I just  I decided like ... helping out a friend sort of thing." She stated that prior to July 4, 2006, Fairly had never asked her for a ride anywhere.
Fairly's recollection of events differed slightly from Kim's about the destination of the ride he had requested. He stated that he asked Kim to drive him to his cousin's house, which was located downtown in Spanish Town. He "asked [Kim] for a ride and she agreed to it. She was kind enough to take me." Fairly explained that Kim "missed the turn [to Spanish Town]. I said, well, since we were that far could we go check on the car [that was in the repair shop] to see if the guy was ... working on it." The car was a staff car provided for Fairly's use by the company. According to Fairly, Kim was not taking him by the mechanics to drop him off so that he could pick up the car; it was a spontaneous request that he made when Kim missed the turn toward Spanish Town. In response to an inquiry as to why he rode with Kim that day, Fairly stated, "[s]he was giving me a ride. I thought I had made that clear. She's an employee. My car was in the shop and she was giving me a ride, plain and simple, end of story." He later clarified that in so stating, he did not mean to suggest that Kim was his to use as an employee. He said the reason he asked Kim for a ride was "so I didn't have to call someone else." Fairly testified that he did not order Kim to drive him to his destination nor did he offer to allow her to clock out at a later time in exchange for the ride.
Kim did not recall the time she wrote down on her time sheet as her ending time on July 4, 2006. When asked if she signed out before leaving the store on the day of the accident, Kim replied "[n]o, I may have possibly signed out like the next day. At [Quiznos] things tend to be quite flexible and usually there's  most of the employees like a certain amount of trust ... that we will write the correct time we came in and the time we leave." She stated that she believed that she wrote down 10 a.m. to 1 or 1:30 p.m. as the hours she worked on the day of the accident. Fairly described Kim as "an honest person" and assumed that she had signed out before they left the store.
Kim's job duties were described as "[t]he same as anyone else who works there. To run the line, stock it, cut meat, cut cheese, keep it clean, wait on customers, run the cash register."
An affidavit from the Quiznos store owner, Hoor Naz Jafri, was also submitted by Quizco in support of its motion for summary judgment. According to Jafri, Kim "was only employed to make sandwiches and sell food products to customers. [Quizco] did not pay [Kim] to drive to and from the store, nor was [Kim] provided with a company vehicle or any expenses for her travel to and from the store. [Kim] was not employed by [Quizco] to operate a motor vehicle, or to transport other employees to and from the premises of [Quizco]." Jafri attested that at the time of the accident, neither Kim nor Fairly was being paid by Quizco. He stated that Fairly had no authority to order or otherwise direct Kim to perform any activity when he was not being paid and was not on the Quiznos premises.
The Weishars contend that the deposition testimony established that Kim was performing a "special errand" at the request of Fairly when the accident occurred. Thus, they urge the record contains evidence to support a finding by the trier of fact that she was in the course and scope of her employment such that Quizco may be held vicariously liable for her negligence.
Generally, an employee who is traveling from home to work or returning from work to home is not within the course and scope of his employment. Because an employee usually does not begin work until he reaches his employer's premises, his going to and coming from work is generally considered outside the course of his employment unless he has a duty to perform en route. Henly v. Phillips Abita Lumber Co., 06-1856, p. 11 (La. App. 1st Cir. 10/3/07), 971 So. 2d 1104, 1113. But under the "specific errand rule," a master may be held liable for the normal risks inherent in an employee's travel in accomplishing a special errand, i.e., a situation where the master calls the employee away from the employee's home or regular place of work to serve the master's purpose. See St. Paul Fire & Marine Ins. Co. v. Roberts, 331 So.2d 529 (La. App. 1st Cir. 1976).
In this case, regardless of the destination to which Kim and Fairly were heading when they left the Quiznos store around 1 p.m. on July 4, 2006, the undisputed evidence established that neither considered the ride as one Kim was required to give as part of her employment. While the deposition testimony establishes that the car Fairly wanted to check on was a company car, nothing admitted into evidence suggests that Quizco required Kim to take Fairly to check on the car or that the company car was ready to be released to Fairly and that Kim was taking him to pick it up. Thus, the Weishars failed to demonstrate that at the time of the accident Kim had been called away from her home or regular place of work by Quizco to serve Quizco's purpose.
Mindful that La. C.C.P. art. 966(C)1 provides a motion for summary judgment may be filed after "adequate discovery," because neither party complains of a lack of discovery, all the evidence on the issue of Quizco's vicarious liability has been presented with this motion. The inconsistencies between Fairly's and Kim's versions of their after-work events simply do not create genuine issues of material fact. The inconsistency on where Kim and Fairly were going is not essential to resolution of whether there is vicarious liability in light of the undisputed facts. Neither employee was being paid at the time of the accident; Fairly had no authority over Kim after she clocked out; Kim's duties did not include driving off premises but were limited to in-store responsibilities; Kim did not consider Fairly as her boss but rather as a friend who she was helping out by giving him a ride; and the accident occurred in downtown Baton Rouge, many miles from the Quiznos store. Thus, Quizco established that Kim's post-work activity was not primarily employment rooted, was not reasonably incidental to the performance of employment duties, did not occur during work hours, and did not occur on the employer's premises. See LeBrane, 292 So.2d at 218. In light that both agreed Kim neither was nor felt compelled to take Fairly where he wanted to go after the store closed early, their conduct after work was for purely personal considerations entirely extraneous to the employer's interest. See Richard, 2003 at p. 8, 874 So.2dat 139.
Although the Weishars claim an outstanding issue of material fact as to whether Fairly was Kim's master precludes summary judgment, Jafir's affidavit establishes that Fairly had no authority to order or otherwise direct Kim to perform any activity when he was not being paid and was not on the Quiznos premises. Jafir also attested that Fairly was not being paid at the time of the accident, and there is no dispute that the accident occurred off the Quiznos premises. The Weishars did not offer anything to counter this showing thereby failing "to produce factual support sufficient to establish that [they] will be able to satisfy [their] evidentiary burden of proof at trial." Thus, "there is no genuine issue of material fact." See La. C.C.P. art. 966C(2). Accordingly, the trial court correctly granted summary judgment and dismissed the Weishars' claims against Quizco.

DECREE
For these reasons, we affirm the trial court's judgment, granting summary judgment and dismissing Quizco Companies, L.L.C. from this lawsuit. Appeal costs are assessed against Todd and Shawn Weishar.
AFFIRMED.
GUIDRY, J., dissenting.
I disagree with the majority's conclusion that "the Weishars failed to demonstrate that at the time of the accident Kim had been called away from her ... regular place of work by Quizco to serve Quizco's purpose." Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor. Willis v. Medders, 00-2507, p. 2 (La. 12/8/00), 775 So. 2d 1049, 1050. The function of the court on summary judgment is not to determine the merits of the issues involved, but only to determine whether or not there is a genuine and material factual issue. West ex rel. West v. Watson, 35,278, p. 4 (La. App. 2d Cir. 10/31/01), 799 So. 2d 1189, 1192, writ denied, 01-3179 (La. 2/8/02), 809 So. 2d 140.
The course and scope of employment test requires the trier of fact to determine whether the employee's tortious conduct was so closely connected in time, place and causation to his employment-duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interests. Richard v. Hall, 03-1488, p. 6 (La. 4/23/04), 874 So. 2d 131, 138. The fact that the predominant motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment. Richard, 03-1488 at 6, 874 So. 2d at 138. If the purpose actuates the servant to any appreciable extent, the master is subject to liability if the act is otherwise within the service. Richard, 03-1488 at 6-7, 874 So. 2d at 138
Kim's action of driving her supervisor to a mechanic's shop to check on his company-owned vehicle during her normal work hours at her supervisor's request, which request was made prior to his closing the store for the day and on the premises of the Quiznos store, could reasonably be perceived as serving or benefiting Quizco. See Richard v. Hall, 03-1488 at 6-7, 874 So. 2d at 138; see also Strain v. Williams, 01-2157 (La. App. 1st Cir. 9/27/02), 835 So. 2d 618. To reach any other conclusion, the trial court and the majority herein must impermissibly weigh the evidence to conclude that Kim was not in the course and scope of her employment at the time the accident occurred. As such weighing of the evidence is improper on summary judgment, I respectfully dissent.
NOTES
[1] Although the caption of the original petition incorrectly states Mrs. Weishar's first name "Sean," the body of the petition and later pleadings correctly identify her as "Shawn."
[2] The Weishars' lawsuit was consolidated with another suit filed by the City of Baton Rouge/Parish of East Baton Rouge (City/Parish) against Kim and State Farm Automobile Insurance Company.