# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 14-1067

PARIS MADISON

VERSUS

STATE OF LOUISIANA, DEPARTMENT OF
PUBLIC SAFETY & CORRECTIONS, ET AL.

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 218,252
HONORABLE THOMAS M. YEAGER, DISTRICT JUDGE

**********

## PHYLLIS M. KEATY
## JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, Billy H. Ezell, James T. Genovese, and Phyllis M. Keaty, Judges.

Thibodeaux, C.J., dissents and assigns written reasons.

Saunders, J., dissents for the reasons assigned by Chief Judge Thibodeaux.

AFFIRMED.

**Frank E. Barber**
**Attorney at Law**
**116 Field Street**
**New Iberia, Louisiana 70560-4487**
**(337) 256-8370**
**Counsel for Plaintiff/Appellant:**
   **Paris Madison**

**Laurel I. White**
**Assistant Attorney General**
**Post Office Box 1710**
**Alexandria, Louisiana 71309**
**(318) 487-5944**
**Counsel for Defendants/Appellees:**
   **Richard Stalder**
   **T. W. Thompson**
   **Ronnie Futrell**
   **William Black**
   **State of Louisiana, Department of Public Safety & Corrections**

**David W. Groner**
**Attorney at Law**
**Post Office Box 9207**
**New Iberia, Louisiana 70562-9207**
**(337) 364-3629**
**Counsel for Intervenor:**
   **David Groner, PLC**

**KEATY, Judge.**

The plaintiff, Paris Madison, appeals a judgment granting summary judgment in favor of the defendant, the State of Louisiana, through the Department of Public Safety and Corrections (DOC) dismissing his claims against it with prejudice. For the foregoing reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

The facts in this matter are not in dispute and were outlined by this court in *Madison v. State, Department of Public Safety & Corrections*, 13-389, p. 1 (La.App. 3 Cir. 11/6/13), 124 So.3d 1219, 1220, *writ denied*, 13-2862 (La. 2/21/14), 134 So.3d 582, an earlier appeal arising out of this matter:

> Mr. Madison was an inmate housed at the Work Training Facility North (referred to as Dabadie), a prison operated by the Louisiana Department of Corrections (DOC). Dabadie is adjacent to Camp Beauregard, a National Guard Base operated by the Military Department which utilizes inmate labor from Dabadie. On March 8, 2000, Mr. Madison was performing laundry duty at Camp Beauregard, which entailed transporting baskets of laundry on the bed of a truck. The truck, being driven by Mr. [James] Welch[, now deceased], hit a hole in the road causing Mr. Madison to fall from the vehicle and allegedly sustain injury.

Madison filed a petition for judicial review (PJR) in the Nineteenth Judicial District Court (19th JDC) in East Baton Rouge Parish in July of 2000. Named as defendants in the PJR were various individuals associated with the DOC and the National Guard. By way of a supplemental and amending petition, Madison later converted his PJR to a tort claim against DOC, the National Guard, and Welch, whom he incorrectly identified as a DOC employee. In 2004, the matter was transferred from the 19th JDC to the Ninth Judicial District Court (9th JDC) in Rapides Parish, the parish of proper venue.[1]

---

[1] See La.R.S. 15:1184(B) and (F) which are part of the Prison Litigation Reform Act.

In February 2005, DOC filed a motion for summary judgment seeking to have Madison's claims against it dismissed on the basis that it did not owe a duty to him at the time he was injured on March 8, 2000. Attached to the motion was the affidavit of T.W. Thompson, Warden of the Dabadie prison facility, who stated that Madison was on work release at Camp Beauregard pursuant to La.R.S. 15:832[2] when he fell out of a Camp Beauregard-owned truck being driven by its employee, Welch. Madison filed a memorandum in opposition to the summary judgment wherein he contended that he was under the constant supervision of DOC guards when he was injured and that DOC had failed to offer any evidence that the Military Department had, by statute or by contractual arrangement, agreed to assume the custody of prison inmates performing work detail at Camp Beauregard.[3]

Madison filed a second supplemental and amending petition in April 2005, in which he named the Military Department as an additional defendant and asserted that it was liable for the negligent actions of its employee, Welch, under the doctrine of respondeat superior. More than seven years later, the Military Department, the National Guard, and Welch filed a motion to dismiss and/or motion for summary judgment claiming that Madison's claim against them had prescribed. Madison opposed the motion. By judgment dated October 9, 2012, the trial court decreed that the "motion for summary judgment on prescription is granted," and it dismissed Madison's claims against the Military Department, the National Guard, and Welch. After his motion for a new trial was denied, Madison

---

[2] Louisiana Revised Statutes 15:832 is titled "Work by inmates; allowance."

[3] When Madison filed his memorandum in opposition to the summary judgment, he was apparently under the impression that Welch was a DOC employee and had not yet amended his pleadings to allege that Welch was an employee of the Military Department.

appealed. In *Madison*, 124 So.3d 1219, a panel of this court affirmed the trial court's dismissal of Madison's claims against the State of Louisiana, Military Department, the National Guard, and James Welch based on prescription. The supreme court denied writs, and that decision is now final. *See Madison v. State, Dep't of Pub. Safety & Corr.*, 13-2862 (La. 2/21/14), 134 So.3d 582.

Thereafter, DOC filed a motion to reset its previously filed motion for summary judgment, which had been continued without date several times at the request of all counsel. Following a July 7, 2014 hearing, the trial court orally granted summary judgment in favor of DOC and dismissed Madison's claims against it with prejudice. Written judgment was signed on July 14, 2014. Madison timely appealed and is now before this court asserting that the trial court erred: 1) in granting the motion for summary judgment before considering his pending motion to compel production of documents which he contends are directly relevant to the issues raised in the summary judgment; 2) in improperly taking judicial notice of alleged agreements between DOC and other governmental agencies; and 3) in dismissing DOC because a genuine issue of material fact remains regarding DOC's continued responsibility for him at the time of the accident.

## DISCUSSION

### *Inadequate Discovery*

Madison contends that the trial court's grant of summary judgment in favor of DOC was premature because he had previously filed a motion to compel a copy of any contract or agreement between DOC and the Military Department regarding the use of inmate labor and because he had yet to receive the requested documents. While DOC acknowledges that Madison did file such a motion, it contends that the

hearing on the motion had been continued without date by Madison and never reset for hearing.

In *Gunter v. Jefferson Davis Parish*, 11-1018, p 4-5 (La.App. 3 Cir. 2/1/12), 84 So.3d 705, 708-09, we observed the following:

> Louisiana Code of Civil Procedure Article 966(A)(1) provides that a defendant may move for summary judgment "at any time." Further, La.Code Civ.P. art. 966(C)(1) provides that "[a]fter adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law shall be granted."

> > The provision for adequate discovery does not grant a party an absolute right to delay a decision on a motion for summary judgment until all discovery is complete. *West v. Watson*, 35,278 (La.App. 2 Cir. 10/31/01), 799 So.2d 1189, *writ denied*, 01-3179 (La.2/8/02), 809 So.2d 140. Unless the party opposing the motion for summary judgment shows a probable injustice, a suit should not be delayed pending discovery when it appears at an early stage that there are no genuine issues of fact. *Advance Products & Systems, Inc. v. Simon*, 06-609 (La.App. 3 Cir. 12/6/06), 944 So.2d 788, *writ denied*, 07-26 (La.3/9/07), 949 So.2d 444. The abuse of discretion standard is used to determine if the trial court allowed adequate time for discovery. *Id.*

> *Prime Income Asset Mgmt., Inc. v. Tauzin*, 07-1380, pp. 13-14 (La.App. 3 Cir. 4/30/08), 981 So.2d 897, 905-06. In the case before us, Defendants' Motion for Summary Judgment was filed more than two years after suit was filed and three years after the incident in question. As such, on the facts presented in this case, and considering the fact that Plaintiffs did not seek a continuance of the hearing on the motion, we find no merit to Plaintiffs' contention that the trial court erred in granting summary judgment because of inadequate discovery.

In the matter at hand, DOC filed its motion for summary judgment in February 2005. Although the hearing on the motion was originally set for April 2005, it was later continued for various reasons. In January 2014, DOC filed a motion to reset, and its summary judgment motion eventually came for hearing on July 7, 2014. Madison's attorney did not request that DOC's motion be continued

due to its alleged failure to respond to his client's outstanding discovery request. At the hearing, Madison's attorney mentioned that his client had previously filed a motion to compel, but acknowledged that said motion was not before the court that day. In response, the trial court inquired as to why Madison failed to request a remedy for DOC's failure to comply with his motion to compel.

The accident in which Madison was allegedly injured took place in March 2000, and DOC filed its motion in 2005. While Madison filed his motion to compel in September 2012, he did not ensure that the motion was heard before the hearing on DOC's motion for summary judgment nor did he avail himself of the potential remedies available for the DOC's failure to provide the requested discovery. Given these facts, we find no abuse of discretion in the trial court's decision that adequate time for discovery had been allowed before it entertained DOC's motion for summary judgment. Madison's first assignment of error lacks merit.

### *Judicial Notice*

Madison next contends that the trial court "improperly t[ook] judicial notice of the way that the DOC and other governmental agencies interact with respect to inmates being used for labor and used this alleged knowledge to form the basis on his opinion." DOC counters that the trial court did not err in being knowledgeable regarding the practice of DOC farming out prisoners to various governmental agencies.

Judges do not operate in a vacuum, and their life experiences necessarily come into play when they are on the bench. That being said, we reject Madison's contention that the trial court did not base its ruling in this matter on the evidence presented in conjunction with the motion for summary judgment. While the trial

5

court was familiar with the physical proximity between the prison and Camp Beauregard and had observed the use of inmate labor at the court house, it did not simply rely on that independent knowledge to decide the matter before it. Rather, it granted DOC's motion for summary judgment only after having reviewed the evidence presented in support of and in opposition to the motion. Accordingly, there is no merit to Madison's second assignment of error.

### *Genuine Issue of Material Fact*

Madison contends that summary judgment was improperly granted because genuine issues of material fact remained regarding the association between DOC and the Military Department concerning the use of inmate labor and regarding DOC's continued responsibility for his safety when he was working at Camp Beauregard. DOC disagrees contending that Madison had the burden of proving that it breached a duty to protect him from the risk of being injured due to a National Guard employee's negligent driving while on work release on National Guard-owned property. Moreover, DOC submits that, while all those sentenced to hard labor in this state are placed in its legal custody, when one of them suffers injuries while on work release, the private employer who has physical custody of the inmate at the time of his injury is liable for his injuries.

Appellate courts review summary judgments de novo "applying the same criteria as the district court in determining whether summary judgment is appropriate." *P.G. Diners, Inc. v. Cat Scale Co.*, 04-757, p. 1 (La.App. 3 Cir. 11/10/04), 886 So.2d 1253, 1254.

> Duty is a question of law. *Brock v. Winn Dixie of Louisiana, Inc.,* 617 So.2d 1234 (La.App. 3 Cir.1993); *Harris v. Pizza Hut of Louisiana, Inc.*, 455 So.2d 1364 (La.1984). The duty issue may be appropriate for resolution by summary judgment. La.Code Civ.P. art. 966(B). However, summary judgment is proper, in such instances,

only when it is clear no duty exists as a matter of law; and, the facts or credibility of the witnesses are not in dispute.

*Parish v. L.M. Daigle Oil Co.*, 98-1716, pp. 2-3 (La.App. 3 Cir. 6/23/99), 742 So.2d 18, 20

> A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Smitko v. Gulf South Shrimp, Inc.*, 2011-2566 (La.7/2/12), 94 So.3d 750, 755.
>
> Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is "material" for summary judgment purposes can be seen only in light of the substantive law applicable to the case. *Richard v. Hall*, 2003-1488 (La.4/23/04), 874 So.2d 131, 137.

*Jackson v. City of New Orleans*, 12-2742, pp. 5-6 (La. 1/28/14), 144 So.3d 876, 882, *cert. denied sub nom., Jackson v. City of New Orleans, La.*, __ U.S. __, 135 S.Ct. 197 (2014).

Louisiana Revised Statutes 15:832, entitled "Work by inmates; allowance," allows DOC to "enter into contractual agreements for the use of inmate labor by any department, board, commission, or agency of this state responsible for the conservation of natural resources or the construction and maintenance of public works." La.R.S. 15:832(C).[4] The statute makes the following provisions with regard to such contracts:

> When inmates are assigned to maintenance work at public facilities outside the department, **the contracting authority shall agree**:
>
> (1) **To accept the physical custody of the inmate**.

---

[4] The statute contains several restrictions to such contracts that are not applicable to this matter.

7

(2) To physically house the inmate in the parish jail or prison at all times and to allow the inmate to leave the parish jail or prison, or other housing facility, only to perform work to which he has been assigned.

(3) To notify the department prior to granting the inmate any pass, furlough, or emergency leave, said notification to include the reasons for the release and the duration thereof.

. . . .

(5) To refer to the department for processing and approval in accordance with department regulations for the inmate to be transferred to a work release type program.

(6) To notify the department promptly of any escape, new offense, or conviction involving the inmate, or of any unusual occurrence involving the inmate.

(7) **To maintain custody of the inmate until he is ordered released from custody or returned by the department**; and to provide transportation of the inmate to and from any state correctional institution as may be required.

La.R.S. 15:832(D) (emphasis added).

In *Lee v. State, ex rel. Department of Public Safety & Corrections*, 10-1013 (La.App. 3 Cir. 3/30/11), 60 So.3d 106, a DOC inmate was injured while working at Lumber Investors, Inc., as part of a work release program. As a result, he filed suit against DOC, the parish sheriff who administered the work release program, and the parish through the police jury. DOC filed a motion for summary judgment seeking dismissal of the inmates' claims against it on the grounds that it was not the inmates' employer, and, thus, his sole remedy was that of workers' compensation against his private employer, Lumber Investors, Inc. While the inmate did not file a memorandum in opposition to DOC's motion, at the hearing, his attorney argued that summary judgment should be denied because "a question remained as to whether the DOC owed Plaintiff a duty to insure that he was working in a safe environment while participating in the work release program."

8

*Id.* at 109. After the trial court granted the motion, the inmate appealed asserting that "genuine issues of material fact remained regarding whether the DOC owed him a duty to protect him from the harm he suffered and whether that duty was breached." *Id.* at 107. In affirming the grant of summary judgment, this court relied on *Rogers v. Louisiana Department of Corrections,* 43,000 (La.App. 2 Cir. 4/30/08), 982 So.2d 252, *writ denied*, 08-1178 (La. 9/19/08), 992 So.2d 931, which held that work release inmates are employees of their private employers and not employees of this state.

In the current matter, Madison did not file a supplemental memorandum in opposition to DOC's motion for summary judgment after he amended his petition in 2005 to name the Military Department and its employee Welch, who was driving the truck on which Madison was riding when he was injured, as additional defendants. He, likewise, failed to file a supplemental opposition after DOC reset its motion for summary judgment for hearing in early 2014. Nevertheless, at the July 7, 2014 hearing on the motion, the trial court allowed Madison's counsel, without opposition from counsel for DOC, to introduce into evidence the depositions of Ronnie Futrell and Thomas Thompson, the Warden and Deputy Warden, respectively, of the Dabadie prison facility at the time of Madison's accident.[5] Madison argued that portions of those depositions supported his theory that DOC never gave up complete control over the inmates who worked at Camp Beauregard.

After having completed a de novo review, we conclude that summary judgment was properly granted in favor of DOC. While *Lee*, 60 So.3d 106,

---

[5] The depositions of Warden Futrell and Deputy Warden Thompson were taken on January 27, 2010.

involved La.R.S. 15:711, rather than La.R.S. 15:832, the relevant statute herein, we believe that the principles that we recognized in *Lee* apply with equal force to this matter. [6]   Although both Warden Futrell and Deputy Warden Thompson acknowledged that DOC retained the right to count and to check on the inmates who were working at Camp Beauregard, they both indicated that the inmates were under the direct custody and control of the National Guard, rather than DOC, at those times.  The mere fact that DOC retained legal custody of Madison while he was on work release at Camp Beauregard is of no moment.  *See Harper v. State, Dep't of Pub. Safety and Corr.*, 96-47 (La. 9/5/96), 679 So.2d 1321.  Louisiana Revised Statutes 15:832 and the jurisprudence of this state clearly provide that DOC owes no duty to ensure the safety of its inmates while they are performing work release at another facility.  *See Lee*, 60 So.3d 106 and *Rogers*, 992 So.2d 931. Madison's final assignment of error is without merit.

## DECREE

For the foregoing reasons, the judgment rendered on July 14, 2014, in favor of the State of Louisiana, through the Department of Public Safety and Corrections, dismissing Paris Madison's claims against it with prejudice is affirmed.  All costs of this appeal are assessed against Paris Madison.

**AFFIRMED.**

---

[6] Louisiana Revised Statutes 15:711 is located in Chapter 7 of Title 15, which is titled Prisons and Correctional Institutions.  Section 711, titled "Work release program" is found in Part I of Chapter 7 which relates to prisons and prisoners in general, while Section 832 is found in Part III-A of Chapter 7 which relates to the Louisiana Department of Corrections.

PARIS MADISON

VERSUS

STATE OF LOUISIANA, DEPARTMENT OF
PUBLIC SAFETY & CORRECTIONS, ET AL.

**THIBODEAUX, Chief Judge, dissenting.**

While I agree that the Department of Public Safety & Corrections owes no duty to ensure the safety of its inmates while performing work release at another facility, that duty may be assumed under certain circumstances. The facts surrounding this case support those other circumstances.

A "duty is a question of law that may be resolved by summary judgment when neither the facts nor the credibility of witnesses are in dispute and when it is clear that no duty is owed as a matter of law." *Lee v. State Dep't of Pub. Safety & Corr.*, 10-1013, p. 6 (La.App. 3 Cir. 3/30/11), 60 So.3d 106, 110. Here, the facts are in dispute as to who had complete control, and it is not so clear that a duty is not owed. The depositions of Ronnie Futrell, Warden, and Thomas Thompson, Deputy Warden, were admitted into evidence. The deposition testimony, in my view, clearly indicates that the Department of Public Safety & Corrections would sometimes provide supervision for some of these inmates at issue. Thus, the Department of Public Safety & Corrections never abdicated complete control to the National Guard or to the Louisiana Military Department. Material facts exist with respect to whether, under the circumstances of this case, the Department of Public Safety & Corrections owed a duty to protect the injured inmate.

For the foregoing reasons, I respectfully dissent.